# LATNEY *v.* UNITED STATES.

---

CRIMINAL LAW; POLICE COURT; INFORMATIONS; COLLATERAL ATTACK; PETIT LARCENY.

1. *Quære,* whether the act of Congress of June 17, 1870, providing that prosecutions in the police court of this District shall be by information under oath, is repealed by the act of March 3, 1891, providing " that prosecutions in the Police Court shall be by information by the proper prosecuting officer."

2. By appearing and pleading to an information for petit larceny in the police court, in which information it is alleged that it is made on

the oath of a person named therein, and submitting to be tried thereon without objection, the defendant admits the validity and sufficiency of the information, and, if convicted, cannot afterwards, when indicted for petit larceny, as a second offense, be heard in such collateral proceeding to deny the legal sufficiency of the information upon the ground that it was not sworn to, or to claim that his arrest for the first offense was illegal; Associate Justice SHEPARD, *dissenting*.

No. 1047. Submitted April 9, 1901. Decided May 22, 1901.

HEARING on an appeal by a defendant indicted, convicted and sentenced in the Supreme Court of the District of Columbia of the crime of petit larceny as a second offense. *Affirmed.*

The COURT in its opinion stated the case as follows:

This appeal comes from the Supreme Court of the District of Columbia, and is brought here by Julius Latney, the appellant, who was indicted for, tried and convicted in that court of the crime of petit larceny; and in the first count of the indictment the accused is charged with the crime as a second offense of petit larceny, under section 1161, Revised Statutes of the District of Columbia. Upon the verdict of guilty as charged in the first count, there was a motion in arrest of judgment, and also a motion for a new trial, and upon the overruling of those motions the accused was sentenced to imprisonment, and from which judgment he has appealed.

It is shown by the bill of exception taken at the trial, that, for the purpose of establishing the fact of the first conviction of the traverser of petit larceny, as alleged in the first count of the indictment, the record of the police court of the District of Columbia, showing such conviction on the 16th day of July, 1898, was offered in evidence by the prosecution. This record contains the information, made by the attorney of the United States for the District of Columbia, upon which the traverser was tried and convicted in the

police court. Omitting the formal parts, the information stated and alleged, that the said United States attorney, by his assistant, " gives the court to understand and be informed, on the oath of one Mandel Slimes, made on the 16th day of July, 1898, at, etc., before the said D. W. Baker, one of the assistants to the attorney of the United States as aforesaid, that one Samuel Turner, Julius Latney, and Edward Beckett, all of the District aforesaid, on the 12th day of July, in the year 1898, with force, etc., at the District and within the jurisdiction of this court, 24 pairs of stockings, each pair of the value of ten cents; 12 other pairs of stockings, each pair of the value of five cents, all lawful money, etc., of the goods and chattels of Mandel Slimes then and there being, feloniously did steal, take and carry away, against the form of the statute," etc.

This information was duly signed by the United States attorney and his assistant, with proper designation of their official character.

The Government then offered in evidence a book known as and called " Docket of Police Court, District of Columbia," wherein is kept entries of cases arising in and the disposition of the same by the said police court; and it was shown by said book or docket that one Julius Latney was arraigned in that court for the crime of petit larceny; that he pleaded not guilty to the information, was tried and convicted in said court of said charge of petit larceny, on the 16th day of July, 1898, and that the sentence imposed by the court upon the accused was a fine of $5, or in default of payment, that he be imprisoned in jail for the term of fifteen days, and that the accused having made default in payment of the fine, he was committed to jail.

The Government followed up this evidence with proof to show the identity of the accused thus convicted and sentenced in the police court with the accused in the case at bar.

To which offer in evidence of the book or docket of entries of the police court the accused objected, upon the ground that the same was immaterial, irrelevant, and incompetent for the reason that the police court did not have the power

and jurisdiction in the premises to try the defendant, and
that its judgment entered therein was an absolute nullity;
and that it was shown upon the face of the information
given in evidence that the same was insufficient, and that
the court did not acquire jurisdiction to proceed in the case.
This objection was overruled by the court, and the evidence
was admitted.    To which ruling the defendant excepted.

It was then proven by a police officer that he arrested the
defendant several days previous to the 16th day of July,
1898, for the offense of petit larceny, and that this defendant
was the same Julius Latney mentioned in the information
in the police court, herein referred to.    It is not stated,
however, under what circumstances the arrest was made;
whether the party was taken with the goods in his posses-
sion, or upon what information the officer acted in making
the arrest.    The testimony of the officer was objected to by
the defendant, upon the ground that the information upon
which the defendant had been arrested was insufficient, and
that the proceedings of the police court were invalid there-
under.    The objection to the evidence was overruled, and
the testimony was allowed to be given,— to which the de-
fendant excepted.

Upon the evidence offered by the Government the defend-
ant moved the court to direct the jury to render a verdict
of not guilty on the first count contained in the indictment,
because the Government had failed to prove that the de-
fendant had been legally convicted in the police court of the
first offense of petit larceny.    But this motion was also
overruled, and the defendant excepted.

*Mr. Charles A. Douglass* and *Mr. Levi H. David* for the
appellant:

1. The act of Congress of June 17, 1870, provides that
"prosecutions in the police court shall be by information
under oath" (Sec. 1064, R. S. D. C.); also that the "judge
shall have power to issue process for the arrest of persons
against whom information may be filed or complaint under

oath be made " (Sec. 1050, R. S. D. C.) ; also that " any justice of the peace may on complaint under oath or actual view issue warrants returnable to the police court against persons accused of crimes and offenses committed in the District " (Sec. 999, R. S. D. C.). By act of Congress of March 3, 1891 (26 Stat. 848), the act creating the police court was amended, and section 2, *inter alia,* provides " that prosecutions in the police court shall be by information by the proper prosecuting officer." By act of Congress of July 23, 1892 (amended Sup. R. S. U. S. relating to the District of Columbia, vol. 2, p. 46), the second section of the act of March 3, 1891, was amended, but the same provision stands: " That prosecutions in the police court shall be on information by the proper prosecuting officer." There being no inconsistency between the act of June 17, 1870, providing that " prosecutions in the police court shall be by information under oath," and the amendatory acts of March 3, 1891, and July 23, 1892, by both of which said amendments it is provided " that prosecutions in the police court shall be by information by the proper prosecuting officer," it is submitted that the said acts of 1870 and 1891 and 1892 should be construed together; and if so, it is plain that the statute law will read: *Prosecutions in the police court shall be by information under oath by the proper prosecuting officer.* It cannot be here contended that the provisions contained in the act of 1870 requiring informations in the police court to be under oath was *expressly* repealed either by the acts of 1891 or 1892. It may be urged that the words " under oath," in the act of 1870, were repealed by implication.

It is well settled that repeals by implication are not favored, and that the proper rule of interpretation is that unless there is a manifest and irreconcilable repugnancy between the provisions of the two acts, that the former will not be construed to have been repealed by the provisions of the latter act. *Chew Heong* v. *U. S.,* 112 U. S. 536; *Wood* v. *The United States,* 16 Pet. 342; *Beals* v. *Hale,* 4 How. 37; *The United States* v. *Sixty-seven Packages of Dry Goods,* 17 How. 87; *United States* v. *Walker,* 22 How. 299 (reaf-

firming *Wood* v. *The U. S., supra*); *Red Rock* v. *Henry,*
106 U. S. 596; *Clay County* v. *Society for Savings,* 104
U. S. 579.   See also *Ex parte Crow Dog,* 109 U. S. 556;
*Harrington* v. *U. S.,* 78 U. S. 167.

The prosecuting officer himself must swear to the infor-
mation, or there should be filed a written formal affidavit
setting out the facts and circumstances constituting the
offense, showing a probable cause and forming the basis
for an information.   *Welch* v. *Scott,* 5 Ired. (N. C.) 72;
*U. S.* v. *Turead,* 20 Fed. Rep. 621; *State* v. *Mann,* 5 Ired.
(N. C.) 45; *Boyd* v. *U. S.,* 116 U. S. 616; *Davis* v. *The
State,* 2 Tex. App. 184; *Shelton* v. *Berry,* 19 Tex. App. 154;
*McGlinchy* v. *Burrows,* 41 Me. 74; *Grumon* v. *Raymond,*
1 Conn. 39; *D. C.* v. *Herlihy,* 1 MacArthur, 466; *Edwards*
v. *McKay,* 73 Ill. 570; *Myers* v. *The People of State of
Illinois,* 67 Ill. 503; *Dishongh* v. *The State,* 4 Tex. App.
158; *U. S.* v. *Polite,* 35 Fed. Rep. 59; *Tracy* v. *Williams,* 4
Conn. 107; *Eichenlaub* v. *State,* 36 Ohio St. 140, 144;
*Thornberry* v. *State,* 3 Tex. App. 36; Chitty's Crim. Law
(5th Am. ed.), 34; *State* v. *Devine,* 4 Iowa, 443; 21 Eng.
& Am. Encyc. of Law (1st ed.), 961; *Bell* v. *Clapp,* 10 Johns.
(N. Y.) 263; *State* v. *Spirituous Liquors,* 37 Me. 228; *Sarah
Wray's Case,* 41 Mich. 299; *People* v. *Heffron,* 53 Mich.
527; *Ex parte Dimmig,* 74 Cal. 164; *Gates* v. *The State,* 3
Ohio St. 294; *U. S.* v. *Maxwell,* 3 Dillon (U. S. Circuit
Court Rep.) 275; *Edwards* v. *McKay,* 73 Ill. 570; *Crenshaw*
v. *Taylor,* 70 Iowa, 380; *Hargadine* v. *Van Horn,* 72 Mo.
370; *Casey* v. *State,* 5 Tex. App. 462; *Burroughs* v. *The
State,* 72 Ind. 334; *Turner* v. *State,* 3 Tex. App. 551; *Smith*
v. *The State,* 3 Tex. App. 549; *Lindsey* v. *The State,* 72
Ind. 39.

2. If it be true that the acts of 1891 and 1892 repeal the
act of 1870, and that it is no longer necessary for informa-
tions by the prosecuting officer to be under oath, or if there
was in this case no affidavit supporting the charge in the in-
formation, then it would seem that the constitutional rights
of the defendant were violated in the case under review.
*In the Matter of a Rule of Court,* 3 Woods (U. S.), 502;

*Gates* v. *The State,* 3 Ohio St. 294; *Lustig* v. *People,* 18 Colo. 217; *Sarah Wray's Case,* 41 Mich. 299.

3. If the information was fundamentally violative of the statute, or if the statute be so construed as to be in contravention of the Fourth Amendment to the Constitution of the United States — in either event, the whole proceeding in the police court on the 16th day of July, 1898, would be absolutely null and void for want of jurisdiction in said court, and the docket showing a record of said cause would not be properly admissible in evidence in the trial of the present case.

It must be conceded that the police court of this District is a court of " inferior or limited authority," deriving its powers from the statute creating it, and it was, therefore, incumbent upon the Government to show affirmatively that the said court had conformed to the statute regulating trials of accused persons in that court. No act of the defendant could confer jurisdiction, and if it can be shown that the statute which points out a method for acquiring jurisdiction has not been complied with, a judgment entered is in excess of its jurisdiction and, therefore, void. *A fortiori,* a judgment would be void if it appears that in a proceeding in said court the Constitution of the United States has been violated.

Moreover, if " want of power [of the police court] appears on the face of the record of his [appellant's] conviction *whether in the indictment or elsewhere,"* the judgment of said court is an absolute nullity. *In re McCoy,* 127 U. S. 731. See also *Elliot* v. *Piersal,* 1 Pet. (U. S.) 328; *Hickey's Lessee* v. *Stewart,* 3 How. (U. S.) 750; *Thompson* v. *Whitman,* 18 Wall. (U. S.) 457; *Christmas* v. *Russell,* 5 Wall. (U. S.) 290; *Bissell* v. *Briggs,* 9 Mass. 462; *Pennywit* v. *Foote,* 27 Ohio St. 600; *Gray* v. *Larrimore,* 2 Abb. (U. S.) 542; *Ex parte Nielson,* 131 U. S. 176.

*Mr. T. H. Anderson,* United States Attorney, for the District of Columbia, and *Mr. Ashley M. Gould,* Assistant United States Attorney, for the United States.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The questions intended to be presented by the exceptions, and which have been argued in this court, are two: 1st. That the information on which the defendant was tried and convicted in the police court was illegal, because not under oath in manner and form as the law requires; 2nd. That the arrest, trial, and conviction of the defendant under the information of July 16, 1898, in the police court, was in violation of Article IV of the Amendments to the Constitution of the United States. But these two propositions may be well considered together, as presenting one general question relating to the power and jurisdiction of the police court to try and convict the defendant.

That the police court of this District had full power and jurisdiction over the subject of petit larceny, and full power and jurisdiction to try and convict a party charged with the commission of that crime, upon information filed by the United States attorney, is not questioned. That jurisdiction is expressly conferred by the act of Congress, entitled "An act to define the jurisdiction of the police court of the District of Columbia, approved March 3, 1891," read in connection with section 1173, Revised Statutes, District of Columbia.

It is true, the police court is a statutory tribunal of special and limited jurisdiction, but that fact does not affect the question involved in this case, if the proceedings in that court show upon their face that the court had acquired jurisdiction of the subject-matter and of the person charged, even though the proceedings may have been conducted erroneously. For, as said by the Supreme Court, in the case of *Comstock* v. *Crawford,* 3 Wall. 396, 403, " It is well settled that when the jurisdiction of a court of limited and special authority appears upon the face of its proceedings, its action cannot be collaterally attacked for mere error or irregularity. The jurisdiction appearing, the same presumption of law arises that it was rightly exercised as prevails with reference to the action of a court of superior and general authority."

In this case the party was plainly and explicitly charged in the information with the crime of petit larceny. He appeared to the information, and made no objection thereto, or to any proceeding upon which it was founded, because of supposed defects or legal insufficiencies therein, before trial. He was arraigned and pleaded not guilty, and was tried and convicted, and thereupon sentenced to imprisonment, and served out the term of confinement.

If the information had been defective and legally insufficient, as now supposed, he should have moved to quash it, or he could have sued out a writ of error and taken the case to an appellate court for review. But he did neither; and the question now is, whether he can assail the proceedings under which he was tried and convicted in the police court, for alleged legal insufficiencies therein, in the present collateral prosecution.

That gives rise to the question, What is a collateral attack? According to the authorities, that is held to be a collateral attack, when a judicial order, judgment or proceeding is offered in evidence in another proceeding, and an objection is taken thereto on account of judicial errors therein. The books furnish many familiar instances of this, as where a person relies on a judgment as a justification for a trespass, assault, or imprisonment; or to show his right or title in *habeas corpus,* replevin, trover or trespass. That the objection to the judgment for judicial errors in such cases is a collateral attack, the cases all agree. Vanfl. Coll. Attack, 5. In other words, a collateral attack on a judicial proceeding is an attempt to avoid, defeat or evade it, or to deny its force and effect, in some manner other than in a direct proceeding for its review and correction of errors therein. Here the attack is made upon the proceedings in the police court, by an objection to their admissibility in evidence, whereby it is attempted to be shown that they are void and wholly without effect.

Upon the soundest principles and the most uniform rulings of the courts, this cannot be done, except where it is clearly shown that the proceeding is utterly void for want

of jurisdiction in the court that rendered the judgment assailed. Judge Cooley, in his work on Constitutional Limitations (6th ed.), pp. 502, 503, has stated the doctrine upon this subject with as much precision and clearness as can be found in any of the authorities. He there lays it down as text law, that " when it is once made to appear that a court has jurisdiction both of the subject-matter and of the parties, the judgment which it pronounces must be held conclusive and binding upon the parties thereto and their privies, notwithstanding the court may have proceeded irregularly, or erred in its application of the law to the case before it. It is a general rule that irregularities in the course of judicial proceedings do not render them void. An irregularity may be defined as the failure to observe that particular course of proceeding which, conformably with the practice of the court, ought to have been observed in the case; and if a party claims to be aggrieved by this, he must apply to the court in which the suit is pending to set aside the proceedings, or to give him such other redress as he thinks himself entitled to; or he must take steps to have the judgment reversed by removing the case for review to an appellate court, if any such there be. Whenever the question of the validity of the proceedings arises in any collateral suit, he will be held bound by them to the same extent as if in all respects the court had proceeded according to law. An irregularity cannot be taken advantage of collaterally; that is to say, in any other suit than that in which the irregularity occurs, or on an appeal or process in error therefrom. And even in the same proceeding an irregularity may be waived, and will commonly be held to be waived if the party entitled to complain of it shall take any subsequent step in the case inconsistent with an intent on his part to take advantage of it."

This is the careful statement of the result of the authorities upon the subject, a large number of which the learned author has collected and cited in the notes to his text.

It is contended on the part of the defendant that the law requires that the information should have been founded upon oath or affidavit of the prosecuting witness, or other person

possessing knowledge of the facts, and that the allegation in the information that it was made on the oath of one Mandel Slimes, did not gratify the requirement of the statute, and therefore the information was legally insufficient. But whether the act of Congress of June 17, 1870, which provided that prosecutions in the police court should be by information under oath, was repealed or not, by the act of Congress of March 3, 1891, which simply provides " that prosecutions in the police court shall be by information by the proper prosecuting officer," is a question that we need not decide in this case. The information, as we have seen, alleged that it was made on the oath of one Slimes, and the defendant appeared to the information, took no objection to any supposed defect therein, but pleaded thereto, was tried and convicted thereon, and served out his sentence. By thus appearing and pleading to the information, and submitting to be tried thereon without objection, the defendant, in legal contemplation, admitted the validity and sufficiency of the information, and he could not afterwards be heard to deny its legal sufficiency, and especially not in a collateral proceeding. This principle would seem to be fully settled by the Supreme Court of the United States, in the case of *Frisbie* v. *United States,* 157 U. S. 160. In that case, the indictment was for the violation of the pension laws, and after pleading, trial, conviction and sentence, the defendant took writ of error to the Supreme Court, where he sought to avail himself of several alleged defects in the indictment, among which was that the indictment did not show by any indorsement thereon that it had been found to be " a true bill," and was without the signature of the foreman of the grand jury. But in answer to the objection that the indictment was invalid and that the defendant could not be legally tried thereon, the court said:

" If no indictment had in fact been found by the grand jury — in other words, if there was no legal accusation against him — the defendant should have objected on this ground when the court called upon him to plead to this which it assumed to have been properly presented to it. ' The

very fact of pleading to it admits its genuineness as a record.' *State* v. *Clarkson*, 3 Ala. 378, 383. Instead of denying the existence of any legal accusation, the defendant demurred to it on the ground of insufficiency, thus abandoning all question of form and challenging only the substance. When the demurrer was overruled he entered a plea of not guilty, and that being determined against him by the verdict of the jury, he interposed a motion for a new trial and one in arrest of judgment, without ever suggesting to the court that there was before it no indictment returned by the grand jury of the district. The objection, now for the first time made, comes too late. Whatever action the Circuit Court might have been compelled to take if the matter had been called to its attention in the first instance, the defect is not one which goes to the substance of the accusation, and will not now avail."

In that case the objection to the sufficiency of the indictment was taken in the direct proceeding, and hence the decision applies with a double force in a case like the present, where the objection is made in a collateral proceeding.

Perhaps we have no case in the books where the question as to what will constitute jurisdiction of a magistrate to hear and determine a criminal charge brought before him, though in an irregular and informal manner, was more fully and elaborately discussed, than in the case of *Reg.* v. *Hughes*, 2 Q. B. Div. 614, Crown Cases Reserved. In that case, Hughes, a police constable, procured to be illegally issued, without written information or oath, a warrant for the arrest of one Stanley, upon a charge of assaulting and obstructing him, Hughes, in the discharge of his duties. Upon such warrant Stanley was arrested and brought before a session of two justices, and was, *without objection,* tried by them and convicted. No objection was taken by Stanley, who defended himself, and called and examined witnesses to prove his defense, that he was not guilty. Hughes was afterwards indicted for perjury committed on the trial of Stanley, and he, Hughes, insisted that he should be acquitted, on the ground that the proceedings against Stanley were

informal and without jurisdiction in the magistrates who heard the case. But that objection was overruled, and Hughes was convicted by Bramwell, L. J., before whom the case was tried. The case, however, was reserved to be heard by a full bench of judges assigned to hear in review crown cases reserved. The bench consisted of ten judges, and all, with the exception of Kelley, C. B., who gave no reason for nonconcurrence, concurred in affirming the conviction of Hughes, and in maintaining the jurisdiction of the magistrates before whom Stanley was tried. They held that Stanley was rightly convicted notwithstanding that there was neither written information nor oath, to justify the issue of the warrant against Stanley, and that the justices had jurisdicion to hear and determine the charge, though the warrant upon which the party was arrested and brought before them had been illegally issued.

In the present case the record from the police court does not disclose how or by what means the defendant was brought before that court, though the police officer testified that he had arrested the defendant several days before the trial, and we may, therefore, assume that the party was brought into court in custody of a police officer. But from what subsequently occurred in court, the manner of bringing the defendant before it is quite immaterial to the question of jurisdiction of the court to try and convict the defendant on the information before it. The question of the illegal arrest of Stanley in the case of *Reg.* v. *Hughes, supra,* was much pressed in argument by counsel to show the want of jurisdiction; but the whole nine judges who concurred in affirming the conviction of Hughes, concluded, that the illegal arrest of Stanley did not affect the jurisdiction of the justices to try the case. It was brought before them, and they were bound to try and dispose of it. Mr. Justice Hawkins, in a most thorough and able opinion, and which seems to have been the leading opinion in the case, in treating of that contention, said: " The information, which is in the nature of an indictment, of necessity precedes the process; and it is only after the information is laid, that the question as to

the particular form and nature of the process can properly arise. Process is not essential to the jurisdiction of the justices to hear and adjudicate. It is but the proceeding adopted to compel the appearance of the accused to answer the information already duly laid, without which no hearing in the nature of trial could take place (unless under special statutory provision). If a mere summons is required, no writing or oath is necessary. A bare verbal information is sufficient. If a warrant is required, then, and for that purpose only, an oath substantiating the information is requisite, not only by the provisions in the Jervis's acts, so often referred to, but by the common law, of which it was always a doctrine that a warrant which deprives a man of liberty ought not to issue without oath of the truth of the information. To justify a warrant, I am also of opinion that a written information is necessary."

In another part of the same opinion, the learned judge said: "If the contention on the part of the defendant be correct, then Stanley, even though he had suffered the whole imprisonment to which he was sentenced, would be liable to be tried again, and could not plead *autrefois convict;* and if he had been acquitted would have been in no condition to plead *autrefois acquit.* Two very startling consequences. A flood of authorities might be cited in support of the proposition that no process at all is necessary when, the accused being bodily before the justices, the charge is made in his presence, and he appears and answers to it. In 2 Hawk. 28, it is said: 'It seemeth plain, from the nature of the thing, that there can be no need of process when the defendant is present in court, but only where he is absent.' In *Rex* v. *Stone,* 1 East, 649, Lord Kenyon said: 'Justice requires that a party should be duly summoned and fully heard before he is convicted; but if he be stated to be present at the time of the proceeding, and to have heard all the witnesses, and not to have asked for any further time to bring forward his defense, if he had any, this at all times has been deemed sufficient.'" There are many other authorities cited and quoted from in the course of the opinion to the same effect.

There are many well-considered American cases that fully accord with the principle of the English case just cited. Indeed, the principle would seem to be universal that where an information or complaint is filed charging a crime over which the court has jurisdiction, the court has the power to cause the defendant to be brought before it to answer the charge, and when he is actually before the court and is called upon to plead, if he has any objection to make as to the manner in which he was brought before it, he ought to make the objection then, and move to quash the information, or that he be discharged therefrom. As has been well said, public policy, as also protection to parties accused of crime, requires that such principle should be applied. A great many arrests are made without warrant, and, if the character and circumstances of such arrests could, after trial and judgment, be inquired into and proved, to defeat the jurisdiction of the court and render the judgment void, not only would the administration of justice be obstructed, but the judgment, whether of conviction or acquittal, would be no protection to the defendant; no bar to a subsequent prosecution for the same offense, even though he should have suffered the punishment inflicted on first conviction; as was the case in the present instance. The legality or illegality of the arrest of the accused does not affect the jurisdiction of the court, nor the guilt or innocence of the accused. Trial courts, whether State or Federal, will not, upon the trial of an indictment or information against an accused, upon a plea of not guilty, inquire as to whether or not the defendant was properly or improperly brought within the jurisdiction of the court. A party accused cannot claim immunity from crime upon any such ground. *New Jersey* v. *Noyes,* 18 Fed. Cases, 84; *Brown* v. *Fitzgerald,* 51 Minn. 534; *Com.* v. *Gregory,* 7 Gray, 498; *People* v. *Velarde,* 59 Cal. 457; *State* v. *Longton,* 35 Kans. 375; *State* v. *Dibble,* 59 Conn. 168; *State* v. *Regan,* 67 Me. 380; *Elmore* v. *State,* 45 Ark. 243; *State* v. *Day,* 58 Iowa, 678; *Ledgerwood* v. *State,* 134 Ind. 81; *Aderhold* v. *City of Anniston,* 99 Ala. 521.

To state the special facts of each of the several cases just

cited would unduly prolong this opinion; but, upon exami-
nation, they will all appear fully to support the principles
that we have stated.   And as we find no error in the rulings
of the court below its judgment must be affirmed; and it is
so ordered.  *Judgment affirmed.*

Mr. Justice SHEPARD dissented.