## ELMORE v. THE STATE.

1. CRIMINAL JURISDICTION—STATE AND FEDERAL: *Thief escaping with stolen property to the Indian Territory.*

When a thief takes property stolen in Arkansas into the Indian Territory, with continuing intent to appropriate it to his own use, the federal court at Fort Smith and the state court of the county in which the property is stolen have concurrent jurisdiction to try him for the larceny; and the court first obtaining possession of the case will not be interfered with by the other. But if the federal court, or the judge at chambers, after making the arrest releases him before trial to the state officers, the state court may proceed to trial and conviction.

2. SAME: *Not affected by the legality or illegality of the arrest.*

The court trying a party for crime committed in its jurisdiction will not stop to inquire into the manner or circumstances of his arrest in a foreign country. The legality or illegality of the arrest does not affect the jurisdiction of the court, or thé guilt or innocence of the prisoner.

APPEAL from *Franklin* Circuit Court.
Hon. G. L. CUNNINGHAM, Circuit Judge.

*Thos. Marcum* for Appellant.

The state court had no jurisdiction, because the federal court first obtained jurisdiction of the case.

*Dan W. Jones*, Attorney General, for the State.

There was no conflict of jurisdiction between the courts, as the federal court had released appellant, and the commissioner acted merely as an examining court. *8 Blatchford, 250.*

1. JURISDIC-    SMITH, J.    From the agreed statement of facts, it appears
TION: State
and federal.    that the prisoner stole a horse in this state and fled to the Indian Territory, taking the horse with him.   A commissioner of the United States issued a warrant, charging him with said crime, and upon this he was arrested by the marshal in the Territory and brought before the commissioner at Fort Smith. Upon his examination the prisoner stated that he was guilty of the offense charged against him, and he was committed to jail for trial in the district court of the United States for the western district of Arkansas—a court having exclusive jurisdiction over offenses committed in the Territory.

Afterwards, and before any indictment had been returned into the federal court, or other proceedings had for his punishment, a warrant was issued by a justice of the peace of the county where the crime was committed, for the apprehension of the prisoner, and the judge of the western district, by his order in writing, granted at chambers, directed the surrender of the prisoner to the state authorities.   He was taken by the sheriff to the jail of the proper county and there confined until the next term of court, when he was indicted for the larceny. He interposed a plea to the jurisdiction, alleging that the federal court, having first acquired possession of the case, had exclusive jurisdiction.   And his plea being overruled, he went to trial upon the plea of not guilty, and was duly convicted and sentenced to imprisonment in the penitentiary.

Although the theft was complete in Arkansas, yet the carrying of the stolen horse into the Territory, with the con--

tinuing intent to appropriate the property to the prisoner's own use, might be treated as a new trespass and larceny. And in this view he might be indicted and punished by the courts of either jurisdiction. And in cases of concurrent jurisdiction, the tribunal which first obtains possession of a cause will not be interfered with.

But no trial has been had in the federal court, and no prosecution is pending there. The confession of his guilt in the preliminary investigation before the commissioner amounted to no more than a waiver of examination. By the delivery of the prisoner to our officers, the United States has sufficiently manifested its election not to prosecute for this offense. The case is the same as if the prisoner had been released before the trial, and had then been re-arrested for the same offense by a peace officer of this state.

The court trying a party for crime committed within its jurisdiction will not stop to inquire into the manner or circumstances of his capture in a foreign country. The legality or illegality of his arrest does not affect the jurisdiction of the court, nor the guilt or innocence of the prisoner. *Ex parte Scott, 9 Barn. & Cress., 446; Kerr v. People, 110 Ill., 627;* and cases cited.

But there is no reason to suppose, from anything contained in the record, that the prisoner's arrest in the Indian country was an abuse of the process of the courts of the United States—a mere pretense or trick to bring his person within the jurisdiction of the courts of Arkansas, in the absence of a law or treaty for the extradition of fugitives from justice. He was arrested by a duly authorized officer, upon a lawful writ, and for a crime of which the United States district court for the western district of Arkansas might have taken cognizance. That for any cause it has chosen not to take such cognizance, but to leave the prisoner to be dealt with by the courts of that state whose laws he has violated, is no reason why he should

go unwhipt of justice. He is manifestly guilty, and there is no danger that he will be twice punished for the same offense.

Affirmed.