## DUNBAR *v.* BOURLAND.

### Opinion delivered November 23, 1908.

1. PARTITION—JURISDICTION—Courts of law and equity have concurrent jurisdiction for the partition of real estate. (Page 159.)

2. COURTS—CONCURRENT JURISDICTION.—Where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain such jurisdiction, to the final determination of the action and the enforcement of its judgment or decree. (Page 160.)

3. SAME—Where an action was brought at law to obtain partition of real estate, a subsequent suit in equity seeking the same relief may not be maintained, though additional relief is sought in the latter court. (Page 161.)

4. ACTIONS—REFUSAL TO TRANSFER—REMEDY.—If the circuit court erroneously overrules a motion to transfer an action to equity, the remedy is by appeal and not otherwise. (Page 161.)

5. PLEADING—DUTY TO SET UP ALL DEFENSES.—A defendant, sued at law, must make all the defenses he has, both legal and equitable; and if any of them are exclusively cognizable in equity, he is entitled to a transfer to equity. (Page 161.)

6. PROHIBITION—CONFLICT OF JURISDICTION—Prohibition will lie to prevent a court of equity from entertaining jurisdiction of a suit for partition of certain lands where the circuit court previously had jurisdiction of the same subject-matter. (Page 163.)

7. SAME—TO WHOM DIRECTED—A writ of prohibition lies only to a court and probably in some exceptional cases to a judge in chambers. (Page 164.)

Prohibition to Crawford Chancery Court; *J. Virgil Bourland,* Chancellor; writ ordered.

## STATEMENT BY THE COURT.

This is a petition for writ of prohibition against the chancery court of Crawford County and the Hon. J. V. Bourland, chancellor, seeking to prohibit the court and the chancellor from proceeding to entertain jurisdiction of a suit therein pending wherein E. C. Dunbar is plaintiff and W. T. Dunbar is defendant. The material facts are as follows:

W. T. Dunbar filed a suit in the Crawford Circuit Court against E. C. Dunbar, alleging that the plaintiff and defendant were joint owners in fee simple of a tract of real estate in said county known as the "Sharp Farm;" that the property mentioned is valuable property, and he is desirous of making valuable improvements thereon; that he cannot do so under the conditions that now exist, which were evidenced by a copy of a contract attached to the complaint and made a part thereof, unless a division and partition be had of the estate. The contract is signed by the plaintiff and the defendant, and relates in part to the management of the property. It was prayed that the lands be divided and partitioned according to the respective rights of the plaintiff and defendant, if the same could be done without prejudice; but that, if a division could not be had without prejudice, the lands be sold as the law directs, and the proceeds thereof, after the expenses of the suit were paid, equally divided between the plaintiff and defendant, and for other relief. This suit was filed on the 27th day of April, 1908.

The defendant filed the following answer thereto: "Comes the defendant, and for answer to plaintiff's complaint says:

"It is true that the plaintiff and himself are the owners of certain lands in Crawford County, Arkansas, but not the lands described in plaintiff's complaint. Defendant presumes that the plaintiff intended to describe the farm known as the "Sharp Farm," but, if so, this land is not correctly described in said complaint, and plaintiff and defendant do not jointly own lands of the description set out in plaintiff's complaint.

"Further answering, defendant says that the Sharp Farm owned by them, he presumes, can be divided between them, but

when said farm is divided it will be necessary to have an accounting between the plaintiff and the defendant of the rents and profits and expenditures made upon said farm for the past five years.

"In this connection, defendant says that a contract filed as 'Exhibit A' with plaintiff's complaint never became operative, and the plaintiff acquired no rights thereunder; but, so far as the land jointly owned by them is concerned, such lands and rents and profits thereof stand unaffected by this contract.

"Further answering, defendant says that since plaintiff and defendant became the owners of the Sharp Farm, the plaintiff has received and converted to his own use practically all the rents from said farm, which amounted to from $1,000 to $1,500 a year, for each of the years 1905, 1906 and 1907, and has not accounted to defendant for his part of said rents.

"Defendant has paid the taxes, paid for repairs and made improvements upon said farm, for which he has not been paid, and when said farm is divided, or can be divided, it will be necessary to have an accounting, so as to determine the amount of expenditures made by each of the co-owners, and the amount of rents received by each of the co-owners, so that the rights and equities of each of them can be settled at the same time in one and the same suit.

"As stated above herein, it may be that said farm can be divided, but this cannot be determined until it is examined by commissioners; and, if it should appear to the commissioners that the same cannot be divided, then it will be necessary to sell the same for division and the proceeds of the sale divided between the owners, which should not be done until settlement is had of the rents received by each and the expenditures made by each of them on said farm.

"In addition, there is a suit now pending in the chancery court of Crawford County, Arkansas, a suit brought by Cazort and others to foreclose a mortgage upon eighty acres of said land, and the lands cannot be divided and should not be until this suit is determined, which will be at the next term of the chancery court.

"In view of the fact that an accounting is necessary to determine the respective rights of plaintiff and defendant in the rents

and profits, and it being uncertain whether said land can be divided, and in view of the fact of the pending suit on part of said land in the chancery court, this case should be transferred to the chancery court of Sebastian County, so that reference may be had by said court to a master, to take and state an account of the dealings for the last four years between plaintiff and defendant, with respect to the rents and profits of said farm, the expenditures made in improving same, by it, and all the rights of the parties adjusted in one and the same transaction.

"Wherefore defendant moves the court to transfer this cause to the chancery court of Crawford County."

Defendant filed a motion with his answer to transfer the cause to the chancery court. The court denied the motion to transfer, and continued the cause for the term. Subsequent thereto, and before the next term of the circuit court, the defendant in the circuit court, E. C. Dunbar, filed suit in the chancery court of Crawford County against W. T. Dunbar, the plaintiff in the circuit court, the complaint being as follows, to-wit:

"Comes the plaintiff, and for his cause of action against the defendant says:

"That plaintiff and defendant are owners in equal shares of the following lands, situated in Crawford County, Arkansas, to-wit: (Here follows description of said lands, known as the Sharp Farm.)

"Plaintiff further states that the said above lands were purchased in partnership by plaintiff and defendant in August, 1905, and thereafter they have owned, run and operated same in partnership.

"Plaintiff now states that he now desires to dissolve the farming partnership heretofore existing between them, and under which they have heretofore rented, controlled and managed the said farm, and to have same divided between them, so that one-half may be allotted and set apart for plaintiff, and one-half to the defendant, plaintiff stating that the said lands are susceptible of being divided in kind.

"Plaintiff, however, states that, on the settlement of their partnership transaction, growing out of their partnership and management of said farm, it will be necessary to have an accounting to determine how much of net rents and profits have been

received by each. Plaintiff now states that the farm was at one time rented to a man by the name of Rushing, who executed a mortgage on certain live stock for $1,500, to secure the rents to be paid by him. The defendant, W. T. Dunbar, took charge of this stock and sold same, but has not accounted to plaintiff for any part of the money, having appropriated all of the same to his own use. When the plaintiff and defendant purchased the lands above described, they also bought in partnership a quantity of tools to run said farm, of the value of $245.60. The defendant, W. T. Dunbar, has appropriated all the tools to his own use, and should be held to account for same. The said defendant collected the rents for the year 1907, about $1,000, of which plaintiff has received about $185. The plaintiff paid the taxes on the farm for the year 1906, amounting to about $165. The rents for the present year are not due.

"Plaintiff is informed that he has a right to have the farming partnership dissolved, the lands divided and an accounting between defendant and himself of all transactions growing out of or connecting with their ownership of the said lands; and if either the plaintiff or defendant has received more than his proportion, the one receiving the same has a right to have the other account to him for the excess and have same charged against his interest in the joint property.

"Plaintiff however states that defendant has filed suit in the circuit court of Crawford County, seeking a partition of a part of the lands above described, but the plaintiff is informed and advised that a court of equity is the proper forum in which to have a settlement of their joint and partnership transactions, growing out of their joint ownership of said lands, and to avoid the multiplicity of suits, have all their rights and equities adjusted and determined in one proceeding, which cannot be done in the partition suit brought by defendant, as aforesaid, in Crawford County Circuit Court.

"The premises considered, plaintiff prays that the farming partnership heretofore existing between plaintiff and defendant, and under which they have managed and controlled the farm above described since its purchase by them, be dissolved; that an accounting be had for the rents, profits and expenditures made by each, growing out of their joint ownership of the said prop-

erty; and that, if either has received more than his share of the said rents and profits, then the excess be charged against his interest in the said farm and be declared a lien on same; that commissioners be appointed to divide the said land between plaintiff and defendant, according to their respective rights; that plaintiff be enjoined from further prosecution of the suit brought in the circuit court of Crawford County, Arkansas, to the end that in one proceeding all their rights be determined, and for such other and different relief as in equity plaintiff is entitled to receive."

He also made application for a receiver, and the chancellor, in vacation, appointed Ed Chastain as receiver of the property in controversy, the Sharp Farm; and the parties were ordered to turn the same over to him upon his making affidavit and executing bond as required, which was done. At the first term thereafter of the chancery court, in November, the defendant filed a demurrer to the complaint, in which he stated, first, that the complaint fails to state facts sufficient to constitute a cause of action; and, second, that the complaint shows on its face that there is another action pending between the parties in the Crawford Circuit Court involving the same cause of action; and, third, that the court has no jurisdiction of the person of the defendant or the subject-matter of the action. This demurrer was overruled by the chancery court, to which the defendant excepted; and the defendant thereupon filed his answer to the complaint in equity, in which he denied some of the allegations of the complaint, and admitted that he had filed a suit in the circuit court of Crawford County seeking a partition of the lands mentioned in plaintiff's complaint, and set forth the action of the plaintiff in this suit (the defendant in that) in moving to transfer the cause to equity, which was overruled, and to which he had saved his exceptions, and the record of the proceedings was asked to be made an exhibit to the answer. He alleged that the right of E. C. Dunbar to have the differences between himself and W. T. Dunbar tried in a court of equity had been adjudicated in the Crawford Circuit Court at its June, 1908, term when his motion to transfer the cause to a court of equity was overruled. The prayer of the answer was that the complaint be dismissed, and for other relief.

The chancery court appointed Byers, Hamer and Yoes as commissioners to divide the lands known as the Sharp Farm, a

description of which followed; said lands to be divided in two equal portions in value, if the same could be done, and to set apart and allot one-half in value to the plaintiff and one-half to the defendant. It was further ordered that Quesenbury, the clerk of the court, be appointed master to hear testimony and to take and state an account of all the matters of accounts and indebtedness growing out of and involved in the partnership between plaintiff and defendant in the joint partnership of the above described lands.

Petitioner also prays that Chastain, receiver, Quesenbury, master, and Byers, Hamer and Yoes, commissioners, be commanded to proceed no further under the orders of the chancery court, as well as that a writ of prohibition issue against the court and the chancellor thereof.

*Youmans & Youmans* and *E. Hiner,* for petitioner.

*Ira D. Oglesby,* for respondent.

HILL, C. J., (after stating the facts). W. T. Dunbar filed a suit for partition in Crawford Circuit Court against E. C. Dunbar, seeking a partition of a farm owned jointly by them known as the "Sharp Farm." E. C. Dunbar answered, and asked a transfer to the chancery court. The transfer was denied, and he excepted, and the cause was continued for the term. Thereafter, and before the next term of the circuit court, E. C. Dunbar filed suit in the Crawford Chancery Court against W. T. Dunbar, alleging that they had purchased the Sharp Farm in co-partnership, and thereafter conducted a farming partnership, which he asked to be dissolved, their accounts settled, and the land partitioned, and set forth the pendency in the circuit court of the action therein brought against him by the defendant in this suit, but asserted that he was entitled to have a court of equity settle and adjust their accounts. The defendant aptly objected to the jurisdiction of the chancery court, but that court entertained it, and the defendant has, after due notice, applied here for a writ of prohibition to the chancery court, and its chancellor. The facts are stated in detail in the preceding statement.

The circuit courts and the chancery courts have concurrent jurisdiction for the partition of real estate. The statutory remedy of partition is cumulative to the equitable remedy, and either

may be pursued. *Patton* v. *Wagner,* 19 Ark. 233; *Moore* v. *Willey,* 77 Ark. 317; *Lester* v. *Kirtley,* 83 Ark. 554.

While these remedies are concurrent, it must not be understood that concurrent remedies may be pursued concurrently. Mr. Works says: "Where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgment or decree." Works on Courts and their Jurisdiction, sec. 17.

Mr. Bailey says: "In the distribution of powers among courts it frequently happens that jurisdiction of the same subject-matter is given to different courts. Conflict and confusion would inevitably result unless some rule was adopted to prevent or avoid it. Therefore it has been wisely and uniformly determined that whichever court, of those having jurisdiction, first obtains jurisdiction, or, as is sometimes said, possession of the cause, will retain throughout, to the exclusion of another; and this jurisdiction extends to the execution of the judgment." 1 Bailey on Jurisdiction, § 77.

The Supreme Court of the United States says that this proposition is firmly established. "When a State court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted; and this rule applies alike in both civil and criminal cases." *Harkrader* v. *Wadley,* 172 U. S. 148.

Judge Thayer, speaking for the Circuit Court of Appeals of this circuit, thus expresses it: "The doctrine is well settled that when a court, in the progress of a suit properly pending before it, takes possession of property, either under a writ of replevin or attachment, or by other mesne or final process, or by the appointment of a receiver or assignee, its jurisdiction over the property for the time being becomes exclusive, and no other court can lawfully interfere with the possession so acquired. While property is so held, it cannot be sold under the judgment, sentence, or decree of any other tribunal. Moreover, so long as the property remains *in custodia legis,* no other court, unless by special leave of the court which first acquired jurisdiction, can

lawfully proceed with the trial and determination of a suit, the object of which is to establish a lien against the property, or to subject the specific property to the payment of debts, or which may result in creating conflicting rights or titles thereto. The possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons." *Merritt* v. *American Steel-Barge Co.,* 79 Fed. 228.

The only difference between the suit in the circuit court and the suit in the chancery court is that in the latter court the complaint alleges that the lands were purchased in partnership, and that the plaintiff and defendant thereafter owned and operated the same in partnership. In each suit a partition of the lands is prayed. Other than asking for a dissolution of the farming co-partnership between them, the relief asked in the chancery court is the same as that asked in the answer in the circuit court, with the addition in the chancery court that the excess in plaintiff's favor on the accounting be declared a lien upon the property. In other respects the relief sought by both parties in each court is identical—the partition of the real estate and the adjustment of their respective rights growing out of a settlement of their joint ownership of the Sharp Farm.

In the circuit court the defendant set forth facts which he alleged entitled him to transfer the case to the chancery court. The circuit court overruled his motion to transfer. Whether that court erred in overruling it is not the question here. It had jurisdiction to rule upon that motion, and had jurisdiction of the parties and of the subject-matter of the suit; and if it erred in refusing to transfer the cause to the chancery court, that error can be corrected in this court on appeal, and not otherwise.

If the allegations of the purchase in partnership of the property and the farming partnership thereafter are true and are material to E. C. Dunbar's rights, they should have been made in the answer in the circuit court and the lien sought therein prayed. Section 6098 of Kirby's Digest says that "the defend-

ant may set forth in his answer as many grounds of defense, counterclaim and setoff, whether legal or equitable, as he shall have." In construing that section, this court said: "They had no right to bring a separate action in chancery to obtain relief they might have had in the original suit by making full defense, or preparing to do so, in their application to set aside the judgments." *Ward* v. *Derrick,* 57 Ark. 500.

In *Daniel* v. *Garner,* 71 Ark. 484, it was said: "Under the statutes of this State a defendant, when sued at law, must make all the defenses he has, both legal and equitable. If any of his defenses are exclusively cognizable in equity, he is entitled to have them tried as an·equitable proceedings, and for this purpose to a transfer of the cause to the equity docket or chancery court, as the case may be." To the same effect see *Church* v. *Gallic,* 76 Ark. 423, and authorities there cited. The Code does not tolerate·a partial defense in one court, reserving other defenses to be asserted in another court, in event of failure in the first court. All defenses must be interposed, and then the cause will be tried in the appropriate court. If not interposed, they are waived, and cannot be made the subject-matter of an equitable action.

If it be admitted that the suit in chancery has set forth an equitable cause of action and an equitable remedy in favor of the plaintiff therein, such cause and remedy are not available to the plaintiff in that suit; for, as defendant in the circuit court, it was his duty to have pleaded this equitable cause and equitable remedy in his answer in the circuit court, and upon it move to transfer to the chancery court. And, as above stated, if the court had erred in refusing to transfer it, that was an error that could have been corrected on appeal. But this was not done; and now an alleged equitable cause of action.and equitable remedy are sought to be brought in a court of chancery after an opportunity had .been given him to plead it in a court of law and pray a transfer .to chancery; and this is not permissible. It would necessarily bring courts of co-ordinate jurisdiction into unseemly and unnecessary conflict. If the statutes are obeyed, these conflicts in this respect are impossible. Either court had jurisdiction to partition the land. If there were any matters exclusively cognizable in chancery, the right to trial there could

only be obtained by pleading it and moving the transfer. If error is committed in refusing to make a transfer when the transfer is proper, it can be corrected in this court on appeal, but cannot be corrected by assertion of the same defense or an omitted defense in the chancery court while the circuit court has jurisdiction of the parties and the subject-matter of the controversy. This being true, then the question before this court is as to the proper remedy.

A suit was brought in the Superior Court of Detroit, proceeded to judgment and to appeal to the Supreme Court of Michigan. While the cause was still pending in the Supreme Court, one of the parties brought a suit in the Wayne Circuit Court in chancery, seeking in effect to obtain a new trial of the matter adjudicated in the superior court. The superior court and the circuit court in chancery were of co-ordinate jurisdiction. Application was made to the Supreme Court of Michigan for a writ of prohibition to the circuit court in chancery, and the Supreme Court, speaking through Mr. Chief Justice Cooley, said: "It is a familiar principle that when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such consideration exclusively, but is enforced to prevent unseemly, expensive and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may from the other also, and what is begun may be reciprocated indefinitely. The country has witnessed some such conflicts in which Federal and State courts of co-ordinate powers have unguardedly or unadvisedly undertaken to hamper or restrain each other's action; and the mischiefs of which such cases are suggestive are quite as likely to arise when courts existing as part of the same system intrude with their process upon each other's authority. The writs prayed for should issue." *McLean* v. *Wayne Circuit Judge*, 52 Mich. 258.

This reasoning of this great jurist is so manifestly sound and so throughly in line with the decisions of this court upon

the office and use of the writ of prohibition that it is unhesitatingly accepted as a sound precedent to follow.

The writ of prohibition only lies to a court, and probably in some exceptional cases to a judge at chambers. Section 5157, Kirby's Digest. *Russell v. Jacoway,* 33 Ark. 191; *Reese v. Steel,* 73 Ark. 66. Relief is asked against the receiver, commissioners and master appointed by the chancery court. The writ of prohibition would not run to them; but it is not to be assumed that they would, in the face of the judgment of this court, holding the proceeding in which they were appointed to be void, proceed in the discharge of the duties imposed upon them in that void proceeding. If they should do so, however, the remedies of the petitioner, both for prevention and redress, are ample.

It is the order of the court that the writ of prohibition issue to the Crawford Chancery Court, and its chancellor, prohibiting the entertainment of the said suit of E. C. Dunbar against W. T. Dunbar in that court and all proceedings therein.