## BROWN *v.* STATE.

### Opinion delivered October 6, 1913.

1. BOUNDARY BETWEEN STATES—CONSTITUTION.—Under the Constitution the actual physical boundary of the State of Arkansas, between Greene County, Arkansas, and Duncan County, Missouri, is the middle of the main channel of the St. Francis River. (Page 375.)

2. STATE—BOUNDARY—JURISDICTION.—A State has no inherent authority beyond its jurisdiction. (Page 375.)

3. BOUNDARIES—STATE—CONSTITUTION—LAWS OF CONGRESS.—The physical boundary of the State of Arkansas, as provided in the Constitution of Arkansas, must be construed with reference to, and in connection with, the laws of Congress, which admitted the State into the Union. (Page 376.)

4. CRIMINAL LAW—JURISDICTION—CONCURRENT JURISDICTION.—Appellant was indicted in Greene County, Arkansas, for gaming on a boat two or three hundred feet east of the middle of the main channel of the St. Francis River. *Held* under the acts of Congress admitting the States of Missouri and Arkansas into the Union, and acts of the Legislatures of Missouri and Arkansas granting to each State concurrent jurisdiction over the entire St. Francis River, that the defendant was properly indicted in Greene County, Arkansas. (Page 377.)

Appeal from Greene Circuit Court; *J. F. Gautney,* Judge; affirmed.

*S. R. Simpson,* for appellant.

The boundary line between the State of Arkansas and the State of Missouri separating Greene County from the State of Missouri is the middle of the main channel of the St. Francis River. Const. Ark. 1874, art. 1. The Legislature of the State of Arkansas is without authority (even though the Legislature of Missouri by a similar enactment concurs therein) to extend the criminal jurisdiction of the courts of the State over territory outside the boundaries of the State of Arkansas, and included within the boundaries of the State of Missouri. *Supra,* art. 2, § 10, Const. Ark. 1874; 30 Ark. 41; 32 Ark. 565.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

The acts of the two States extending their jurisdiction over the waters of the St. Francis River so as to make the same concurrent, is a valid exercise of the legislative powers of the States, in keeping with and conformity to the enabling act passed by the Congress of the United States upon the admission of Missouri into the Union. 3 U. S. Stat. at Large, 546; 105 S. W. 930-932; 85 S. W. 925; 131 Am. St. Rep. 765; 16 Am. & Eng. Ann. Cases, 1113; 65 L. R. A. 963-965; 89 Ark. 428-433; 65 Mo. App. 681-687; 85 S. W. (Mo.) 975.

HART, J. Virgil Brown prosecutes this appeal to reverse a judgment of the Greene Circuit Court for the crime of gaming. The testimony shows that the defendant was guilty of gaming in a house boat tied to a bridge across the St. Francis River, between Greene County, Arkansas, and Duncan County, Missouri. At the time the gaming took place, the house boat was two or three hundred feet east of the middle of the main channel of the St. Francis River and opposite to and in front of Greene County, Arkansas. Greene County is bounded on the east by the main channel of the St. Francis River, and the house boat, at the time the gaming took place, was between the east and west meander line of the St. Francis River, being west of the east meander line and east of the center of the main channel of the river. The sole ground upon which the defendant seeks to reverse the judgment is that the offense was not committed within the territory over which the circuit court of Greene County, Arkansas, had jurisdiction.

The enabling act under which the State of Missouri was admitted contains a proviso which reads as follows:

"*And provided also,* That the said State (Missouri) shall have concurrent jurisdiction on the river Mississippi, and every other river bordering on the said State, so far as the rivers form a common boundary to the said State; and any other State or States, now or hereafter to

be formed and bounded by the same, such rivers to be common to both. * * *"

Subsequently Congress passed an act for the admission of the State of Arkansas into the Union, which was approved June 16, 1836, and a part of section 8 of said act reads as follows:

"* * * And nothing in this act shall be construed as an assent by Congress to all or any of the propositions contained in the ordinances of the said convention of the people of Arkansas, nor to deprive the State of Arkansas of the same grants, subject to the same restrictions, which were made to the State of Missouri by virtue of an act entitled 'An act to authorize the people of the Missouri Terriory to form a Constitution and State government, and for the admission of such State into the Union, on an equal footing with the original States, and to prohibit slavery in certain Territories,' approved the 6th day of March, one thousand eight hundred and twenty."

On the 30th day of March, 1911, the General Assembly of the State of Missouri passed an act which gave Arkansas and Missouri concurrent criminal jurisdiction over the whole of the St. Francis River where it is the boundary line between the two States.

On the 8th day of March, 1911, the Legislature of the State of Arkansas extended the criminal jurisdiction of the State to the east meander line of the St. Francis River at the points where that river is the boundary line between the States of Missouri and Arkansas. The act also gave the State of Missouri concurrent jurisdiction with the State of Arkansas over the parts of said territory lying opposite them and between the lines extending and parallel to their northern and southern boundaries. General Acts of Arkansas, 1911, page 46.

It is true that under our Constitution the actual physical boundary of the State of Arkansas over the territory in question extends to the middle of the main channel of the St. Francis River, and it is a general principle of law that a State would not have any inhe-

rent authority beyond its jurisdiction. This physical boundary of the State of Arkansas, as provided in our Constitution, must be construed with reference to, and in connection with, the laws of Congress which admitted the State into the Union.

It will be noted that under the enabling act by which the State of Missouri was first admitted into the Union the Congress of the United States provided that any river bordering on said State which formed a common boundary between the State of Missouri and any other State should be common to both States. Subsequently, when Arkansas was admitted into the Union, the Congress of the United States provided that nothing in the act should be so construed as to deprive the State of Arkansas of the same grants, subject to the same restrictions, which were made to the State of Missouri by virtue of the enabling act under which it was admitted to the Union. In pursuance of the authority granted by the Congress of the United States, when the States of Missouri and of Arkansas were admitted into the Union, both of these States granted or ceded to each other concurrent jurisdiction over the St. Francis River where that river is the boundary line between the two States. Thus, it will be seen that the Congress of the United States, at the time the two States were admitted into the Union, granted to them concurrent jurisdiction over the territory in question, and subsequently the State Legislatures of the two States, by appropriate acts, have granted or ceded to each other concurrent jurisdiction over the territory in question. The acts of Congress above referred to intended to declare that, subject to other laws of the United States, transactions occurring anywhere on the St. Francis River, so far as it should form a common boundary between the States of Missouri and Arkansas, might be lawfully dealt with by the courts of either State according to its laws. The subsequent acts of the Legislatures of the State of Missouri and of Arkansas extended the limits of the sovereignty of these States to the limits which had been sanctioned

by the acts of Congress and ratified by the States passing the acts above referred to. The right of the States, under these conditions, to enforce their civil and criminal laws on the waters of the stream, has been generally declared by the courts of this country. *State* v. *Nielsen,* 51 Ore. 588, 16 A. & E. Ann. Cases, 1113, and case note; *Lemore* v. *Commonwealth,* 105 S. W. (Ky.) 930; *State* v. *Seagraves,* 85 S. W. (Mo.) 925; *Roberts* v. *Fullerton,* 65 L. R. A. 963.

In discussing concurrent State jurisdiction, and its exercise over the whole river, Mr. Rorer, in his work on Interstate Law, at page 438, said:

"The existence of concurrent jurisdiction in two States over a river that is a common boundary between them, as more particularly referred to in section 1 of this chapter, vests in each of such States, and in the courts thereof, except as to things permanent, and except as to maritime and commercial matters cognizable by the National Government and courts, jurisdiction, both civil and criminal, from shore to shore, of all matters of rightful State cognizance occurring upon such river in all parts thereof where it forms such common boundary. Such concurrent jurisdiction obviates the difficulty in judicial proceedings of ascertaining on which side of the main channel of a boundary river occurrences have transpired or crimes have been committed."

Article 2, section 10, of our Constitution provides that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed; and counsel for defendant claims that under this provision of our Constitution the circuit court of Greene County had no jurisdiction to try the defendant. The contention of the defendant is fully answered in the case of the *State* v. *Mullen,* 35 Iowa, 199, where the court said:

"Further it is claimed that the boundary of Lee County on the east is coextensive with that of the State, which is the middle of the main channel of the Missis-

sippi river, and that the local jurisdiction of the district court is of offenses committed in the county in which it is held, and that the district court has no jurisdiction to try an offense committed without the boundary of the county, towit: east of the middle of the main channel of the Mississippi River. If this be true, it amounts to this: That Congress has conferred upon the State, and the State, by positive statute, has assumed a jurisdiction which it has vested in no court, and for which it has provided no means of making effective. That the State possesses a jurisdiction which is vested in no department of the government is a proposition which involves a contradiction. But general jurisdiction for the trial of crimes is vested nowhere unless it be in the district court. Congress having granted to the State of Iowa jurisdiction concurrent with the State of Illinois over the Mississippi River, jurisdiction over so much of the river as lies opposite to any county on the eastern boundary of the State must attach to such county as an incident of its organization. For it is only through the medium of county organizations that this jurisdiction can be rendered availing, and it is a familiar doctrine that the grant of a right or power carries with it as an incident everything necessary to make the power or right effective."

To the same effect is *State* v. *Metcalf*, 65 Mo. App. 681; *Welsh* v. *State* (Ind.), 9 L. R. A. 664.

The judgment will be affirmed.