## GOODMAN *v.* STATE.

### Opinion delivered May 15, 1922.

CRIMINAL LAW—JURISDICTION OVER ISLAND IN ANOTHER STATE.—
Though the enabling acts under which Missouri and Arkansas were admitted into the Union and Acts of Arkansas, 1911, p. 46, and Laws of Missouri, 1911, p. 202, provide for concurrent criminal jurisdiction on the St. Francis River where it is the boundary line between the two States, such acts do not extend the jurisdiction of the criminal courts of this State over islands which are situated on the Missouri side of the main channel.

Appeal from Greene Circuit Court, Second Division; *R. E. L. Johnson,* Judge; reversed.

*M. P. Huddleston,* for appellant.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

HART, J. Bill Goodman was indicted, tried, and convicted in the circuit court of Greene County, Ark., of the crime of having in his possession a still without registering the same with the proper United States officer, in violation of act 324, approved March 23, 1921. General Acts of 1921, p. 372.

The evidence showed that the offense was committed on Indian Hill Island, which is situated in St. Francis River where that river is the dividing line between the States of Arkansas and Missouri, and that Indian Hill

Island is in the State of Missouri in that part of St. Francis River opposite Greene County, Arkansas.

The defendant relies for a reversal of the judgment and sentence of conviction on the ground that the offense was committed on an island within the boundaries of the State of Missouri, and that the circuit court of Greene County, Ark., had no jurisdiction.

It is the contention of the State that the Arkansas circuit court had concurrent jurisdiction of the crime with the criminal courts of the State of Missouri, on the ground that the alleged crime was committed at a place on the St. Francis River opposite Greene County, Ark., although it was within the boundaries of the State of Missouri.

The enabling acts under which the States of Missouri and Arkansas were admitted each contain a provision that they may have concurrent jurisdiction on the rivers forming a common boundary line between said States.

In 1911 the Legislatures of both the States of Missouri and Arkansas passed acts which gave their respective courts concurrent criminal jurisdiction on the St. Francis River where it is the boundary line between the two States. The terms of these acts are set out in *Brown v. State,* 109 Ark. 373. There, in construing these acts, the court held that, although the actual physical boundary line between Greene County, Arkansas, and Dunklin County, Missouri, is the middle of the main channel of the river, yet the courts of each State have concurrent jurisdiction over crimes committed on the St. Francis River, and upheld the conviction of Brown for gaming on a boat two or three hundred feet east of the middle of the main channel of the St. Francis River, which was within the territorial limits of the State of Missouri.

In *Wedding* v. *Meyler,* 192 U. S. 573, the court, with reference to such enabling acts of Congress, said that when it is enacted by the sovereign power that new States, when formed by that power, shall have a certain juris-

diction, those States as they come into existence fall within the range of the enactment and have the jurisdiction.

It is the contention of the Attorney General that this doctrine applies to permanent objects or places on the Missouri side of the main channel of the St. Francis River. This contention is contrary to the text-writers and adjudicated cases on the question.

In Rorer on Interstate Law, 2 Ed. p. 437, it is said that when by the Constitutions and laws of two adjoining States they have for a boundary between them the main channel of a navigable river, and also have concurrent jurisdiction over the whole river in its entire width from shore to shore, yet their courts have no jurisdiction over objects of a fixed and permanent nature situated beyond the main channel and within the territorial boundary of the other State. Continuing, the learned author said:

"But in the very nature of things jurisdiction of permanent objects is exclusive in the State on whose side of the main channel they are situated. Concurrent jurisdiction of the abutting States over permanent objects, as islands situated in the river, or permanent erections at either shore, would be utterly impracticable in the administrative affairs of the State, as rendering owners and residents of such property liable to taxation, and other liabilities and duties of citizenship and ownership, to each of the States. Hence it can never be intended in law that jurisdiction which is concurrent over a river is concurrent also over islands and other permanently fixed objects therein. Nor does the reason of the law of concurrent jurisdiction apply to such objects whose true location in reference to the center of the main channel can always be known or ascertained; but it was to obviate the difficulty of showing on which side thereof occurrences of judicial cognizance had taken place that concurrent jurisdiction was resorted to in law."

In *Roberts* v. *Fullerton,* 117 Wis. 222, 65 L. R. A. 953. Judge MARSHALL, a great and distinguished judge, in discussing the question, said:

"It was competent for the national Legislature, in the formation of the States, to extend the laws of each for certain purposes over territory of the other. That was done, the jurisdiction on boundary waters being extended as to each State from shore to shore, while the boundary line 'between them was placed at the main channel of the river. That necessarily forms the boundary between them as to sovereign rights of ownership. Sovereign rights as regards ownership of the bed of the Mississippi river or anything permanently affixed thereto coincides with territorial boundaries. Therein, as to everything of a tangible character forming a part of the land, whether above the water or below the water, the jurisdiction of each State is exclusive. It would seem that its authority must be the same as regards sovereign property rights incident to sovereign ownership of the land covered by water."

Again, the learned judge said:

"It has been decided in many jurisdictions, including that of the Supreme Court of the United States, that 'concurrent jurisdiction on the river' extends only to the water and to floatable objects therein, not to bridges, dams on any other objects of a permanent nature. If any such object be located upon the Wisconsin side of the main channel of a boundary river so as to constitute a nuisance, it must, accordingly, be deemed not only wholly within the territorial limits of Wisconsin, but within its exclusive jurisdiction. *Mississippi & M. R. Co.* v. *Ward*, 2 Black 485, 17 L. Ed. 311; *Gilbert* v. *Moline Water Power & Mfg. Co.*, 19 Iowa 319; *Dunleith & D. Bridge Co.* v. *Dubuque County*, 55 Iowa 558, 8 N. W. 443; *Buck* v. *Ellenbolt*, 84 Iowa 394, 15 L. R. A. 187, 51 N. W. 22; *Iowa* v. *Illinois*, 147 U. S. 1, 37 L. Ed. 55, 13 Sup. Ct. Rep. 239. The rule laid down in those cases has been uniformly accepted by all courts as sound. The effect thereof is that there is no such thing as concurrent ownership, so to speak, of territory, or incidents thereof,

between the shores of a river divided by the boundary line between this State and the State of Minnesota."

In discussing the question in *Wedding* v. *Meyler,* 192 U. S. 573, the court said:

"The conveniences and inconveniences of concurrent jurisdiction both are obvious and do not need to be stated. We have nothing to do with them when the law-making power has spoken. To avoid misunderstanding it may be well to add that the concurrent jurisdiction given is jurisdiction 'on' the river, and does not extend to permanent structures attached to the river bed and within the boundary of one of the other States."

Having reached the conclusion that the acts in question do not, for any purpose, extend the jurisdiction of the criminal courts of the State of Arkansas on the Missouri side of the main channel of the St. Francis River over islands which are of a permanent nature and part of the land of the State of Missouri, it follows that the circuit court of Greene County, Ark., had no jurisdiction to try the defendant for an offense committed on an island within the territorial limits of the State of Missouri.

Therefore the judgment will be reversed and the cause remanded for further proceedings according to law and not inconsistent with this opinion.