BOTTOM *v*. STATE.

Opinion delivered October 9, 1922.

1. CRIMINAL LAW—JUDICIAL NOTICE OF COUNTY BOUNDARIES.—The courts take judicial knowledge of the boundary lines of counties as fixed by statutes.

2. CRIMINAL LAW—CRIME COMMITTED ON BOUNDARY LINE—VENUE.— Crawford & Moses' Dig., § 2869, providing that when any offense may be committed on the boundary of two counties the indictment may be found and conviction had in either of such counties, applies where a crime is committed on a stream which is the boundary line of two counties, though the act creating the two counties made the middle of the main channel of the stream the line between the two counties, and though the Constitution (art. 2, § 10) guarantees the accused a trial by an impartial jury of the county in which the crime shall have been committed.

3. CONSTITUTIONAL LAW—POLICE POWER.—Crawford and Moses' Dig., § 2869, providing that where a crime is committed on the boundary line of two counties an indictment may be returned and trial had in either county, is a valid exercise of legislative power.

4. CRIMINAL LAW—BOAT FASTENED TO BANK NOT A FIXTURE.—A boat fastened by ropes to the bank of a stream which the boundary line between counties is not a permanent fixture, so that Crawford & Moses' Dig., § 2869, providing that trial may be had in either county where a crime is committed on the boundary line would apply where a crime was committed on such boat.

5. CRIMINAL LAW—CONCURRENT JURISDICTION.—Under Crawford & Moses' Dig., §§ 2874, 2878, providing that "where a river is the boundary line between two counties the criminal jurisdiction of each county shall embrace offenses committed on the river," and that "whenever two or more counties have jurisdiction of the same offense, the county in which the defendant is first arrested shall proceed to try the offense to the exclusion of the others." *held* that where the State procured an indictment of one accused of committing an offense on a stream between two counties bounded thereby, and subsequently procured a second indictment in the other county, both counties being in the same judicial circuit, the finding of the second indictment will be held to constitute a relinquishment of the jurisdiction acquired by the other court.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*R. M. Hutchins,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

McCULLOCH, C. J. The grand jury of White County returned an indictment against appellant on July 17, 1922, charging him with the crime of murder in the first degree, alleged to have been committed in that county by killing one Harry Benning by shooting him with a pistol, and on the trial of the case he was convicted by the jury and his punishment was fixed at life imprisonment. An appeal has been prosecuted to this court, and the only assignment of error urged here is that the court erred in overruling the motion to quash the indictment.

The motion which appellant filed before the commencement of the trial alleged that the killing of Benning occurred on a barge in White River at a place where it constituted the boundary between White and Woodruff counties, and that prior to the returning of the indict-

ment by the grand jury in White County appellant had been arrested in Woodruff County upon a warrant issued by a justice of the peace of that county, that he had been incarcerated in jail awaiting the action of the grand jury of Woodruff County until he was admitted to bail by an order of the chancery court of Woodruff County, and that at the time of the finding of the indictment and of the filing of the motion appellant was under bond for appearance in the Woodruff Circuit Court.

On the trial of the motion it was admitted by the State, as well as by the accused, that the killing of Benning occurred on a barge in White River which was anchored or tied by a rope to the White County bank of the river. The court overruled the motion and proceeded to trial of the case.

Appellant relies upon the statute which provides that where a river is the boundary between two counties, "the criminal jurisdiction of each county shall embrace offenses committed on the river" (Crawford & Moses' Digest, sec. 2874), and that when two or more counties, under the provision mentioned, have jurisdiction of the same offense, "the county in which the defendant is first arrested shall proceed to try the offense to the exclusion of the other." Crawford & Moses' Digest, sec. 2878. The contention is that, pursuant to the terms of this statute, there was concurrent jurisdiction in the two courts, but that exclusive jurisdiction was obtained by the courts in Woodruff County upon the arrest of appellant.

The first contention of the State in avoidance of the effect of the statute is that, according to the undisputed testimony, the killing of Benning occurred on a boat attached to the west bank of the river, which was the White County side of the river, and that, there being no uncertainty as to the location of the place of the killing, and the boundaries of the county being certain, it would be an invasion of the constitutional right of an accused person to attempt to confer jurisdiction on a county which did not embrace in its territory the particular spot

where the crime was committed. The Attorney General relies upon that provision of the Constitution (art. 2, sec. 10), which provides that in criminal prosecutions "the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county in which the crime was committed."

The territorial statute enacted in the year 1835 creating the counties of White and Woodruff made the middle of the main channel of White River the line be-- tween the two counties, and courts take judicial knowledge of the boundary lines of counties as fixed by statute. *Bittle* v. *Stuart,* 34 Ark. 224. Notwithstanding this statute and the constitutional provision similar to the one quoted above, this court, in the case of *State* v. *Rhoda,* 23 Ark. 156, upheld the statute which provides that when any offense may be committed on the boundary of two counties, the indictment may be found and trial and conviction had in either of such counties. Crawford & Moses' Digest, sec. 2869. The doctrine of that case was followed in the case of *Dougan* v. *State,* 30 Ark. 41.

Now, if the Legislature could pass a statute conferring criminal jurisdiction on either county where the offense was committed on the line, it could also provide, where the line was a shifting one, such as the channel of a stream of water, that the whole of the body of water should constitute the line for the purpose of conferring criminal jurisdiction. Such is the effect of the statute now under consideration. It makes the whole of White River the boundary line for the purpose of exercising criminal jurisdiction, and an offense committed on any part of the river is, within the meaning of the statute, on the boundary line, and the courts of both counties have concurrent jurisdiction. We have held, in passing upon statutes conferring concurrent jurisdiction on the waters of streams forming the boundary line between this and other States, that such statutes are valid exercises of the legislative power. *Brown* v. *State,* 109 Ark. 373; *Means* v. *State,* 118 Ark. 362; *Goodman* v. *State,* 153 Ark. 560. The same principles declared in those cases are con-

trolling in determining the validity of the statute now
under consideration. We cannot see any difference in
principle in the power of the Legislature to fix con-
current jurisdiction on the waters of such a stream.

The State relies on *Cox* v. *State,* 67 Ark. 462, where
the court held that the jurisdiction over an offense com-
mitted on a stream which was the boundary line of two
counties was vested in the county on whose side of the
center of the channel the offense was committed. That
decision ignored altogether the statute now under con-
sideration. Nothing was said about the statute in the
opinion. That decision, however, is in conflict with the
principles announced in the later cases cited above and
to which we now adhere.

It is also contended on the part of the State that
the statute does not apply to cases where the offense oc-
curred on permanent objects or structures in the channel
of the stream, and it is contended that in this instance the
offense was committed on a boat which constituted such
a permanent structure as a fixture to the bank. The
Goodman case, *supra,* is relied on as supporting that con-
tention, as in that case we held that the statute had no
application to an island in the channel of the river. We
do not think, however, that the boat fastened to the bank
by ropes constituted a permanent fixture to the bank so
as to make it a part of the shore line. We are therefore
of the opinion that the statute is valid and applies in the
present instance so as to confer jurisdiction upon the
courts of either of the adjoining counties.

It does not follow, however, that the jurisdiction of
the Woodruff court became exclusive so as to prevent the
exercise of jurisdiction by the circuit court of White
County. The statute provides, it is true, that "the
county in which the defendant is first arrested shall pro-
ceed to try the offense, to the exclusion of the others,"
but this does not confer an unending jurisdiction in the
county where the arrest is first made, for when the pro-
ceedings in that county come to an end short of a final

judgment, the jurisdiction again becomes concurrent instead of exclusive, and the prosecution may be made in either county. The State has the right to elect in which county the offense may be prosecuted where the jurisdiction is concurrent under the statute, and until the final judgment, which operates as a bar to further prosecution in either county, the State's right of selection of the forum continues.

The finding of a new indictment and its acceptance by the court in White County was tantamount to an abandonment of the prosecution in Woodruff County and ended the exclusive jurisdiction of the courts in that county. This principle was clearly recognized by this court in the case of *Elmore* v. *State,* 45 Ark. 243, where there was concurrent jurisdiction between one of the counties in this State and the United States District Court which exercised jurisdiction over the Indian Territory. This would be true even if the proceedings in Woodruff County had proceeded to the return of an indictment in that court, for the statute provides that the returning of a second indictment against the same person for the same offense operates as a suspension of the first indictment (Crawford & Moses' Dig., sec. 3037), and the operation of this statute is not confined to indictments returned in the same court, and its necessary effect is to apply to any courts exercising concurrent jurisdiction over the same thing.

In the present instance the two counties are situated in the same judicial circuit, presided over by the same judge, and in which there is the same prosecuting attorney, and we think that the finding and acceptance of the indictment in White County necessarily implies an abandonment of the prosecution initiated in Woodruff County.

It is unnecessary to determine whether or not this rule would extend to concurrent jurisdiction exercised by two or more counties in separate circuits.

It is urged that hopeless confusion and conflict might arise in the assertion of jurisdiction by different courts, but the question of hostile exercise of jurisdiction does not arise in the present case, and we may well wait to dispose of such a situation when it arises. It is to be presumed, however, that there will not arise any hostility or conflict in the enforcement of the criminal laws by the different courts and officers of the State charged with the duty of enforcing those laws.

Our conclusion is that there was no error of the court in overruling the motion to quash the indictment.

There being no other errors claimed by counsel for appellant, the judgment must be affirmed, and it is so ordered.

WOOD and HART, JJ., dissent.

### DISSENTING OPINION.

HART, J. Judge WOOD and myself think that the case of *Elmore* v. *State,* 45 Ark. 243, relied on in the majority opinion, does not sustain the ruling of the court, but on the contrary supports the view we have taken. In that case the court expressly said that in cases of concurrent jurisdiction, the tribunal which first obtains possession of a cause will not be interfered with. This was in the application of the general rule already adopted that, in cases of concurrent jurisdiction in different tribunals, the one first exercising jurisdiction rightfully acquires the control to the exclusion of the other. *Bradley* v. *State,* 32 Ark. 722, and *State* v. *Devers,* 34 Ark. 188.

In the Elmore case there was an order of the judge of the Federal court granted at chambers directing the surrender of the prisoner to the State authorities.

Here the majority opinion proceeds upon the theory that the finding of the indictment and trial of the defendant in the White Circuit Court constituted an election on the part of the State to dismiss the proceedings in Woodruff County and to try the defendant in White County.

Counties are the units for the enforcement of the criminal laws, and the circuit court of each county is a separate and distinct tribunal from that in every other county. *Brown* v. *State,* 109 Ark. 373.

It follows that the circuit court of White County had no power to dismiss the proceedings in Woodruff County. That could only be done by an express order of the Woodruff Circuit Court or of the judge at chambers. This is in accordance with the general rule on the question.

In *Dunbar* v. *Bourland,* 88 Ark. 153, the court quoted the correct rule from the case of *Harkrader* v. *Wadley,* 172 U. S. 148, as follows:

"When a State court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted; and this rule applies alike in both civil and criminal cases."

The court said that this rule prevented conflict and confusion. The court further said that whichever court of those having jurisdiction first obtains jurisdiction, or, as is sometimes said, possession of the case, will retain it throughout to the exclusion of the other, and this jurisdiction extends to the final determination of the action and to the execution of the judgment.

Therefore we respectfully dissent.

### OPINION ON REHEARING.

McCULLOCH, C. J. Our attention is now called to a decision of the Supreme Court of Mississippi in *Coleman* v. *State,* 83 Miss. 290, 64 L. R. A. 808, holding, under a statute conferring concurrent jurisdiction on the courts of two counties, jurisdiction acquired by one of the counties cannot be relinquished or abandoned so as to permit the assumption of jurisdiction by a court in the other county. The doctrine of that case does not seem to us to be sound, nor does it find support in any other authorities. In fact, the case appears to be in conflict with later de-

cisions of the same court. In the case of *Rodgers* v. *State,* 101 Miss. 847, after stating the rule to be that "where concurrent jurisdiction is vested in two courts, the court first acquiring jurisdiction acquires exclusive jurisdiction," it was said: "The reason of the rule is to prevent confusion and conflicts in jurisdiction and to prevent a person from being tried twice for the same offense, but no defendant has a vested right to be tried in any particular court of concurrent jurisdiction. When one court of concurrent jurisdiction has acquired jurisdiction and vountarily relinquishes it by a *nolle pros.* or dismissal of the case, there can be no legal or logical reason for preventing the other court from proceeding under such circumstances, there can be no confusion or conflict between the courts, for the reason that only one court has jurisdiction, or is trying to exercise it."

See also, *State* v. *McNeill,* 10 N. C. 183; *State* v. *Tisdale,* 19 N. C. 159; 16 Corpus Juris, p. 148.

The question of real doubt in the present case is whether or not the acquired jurisdiction of the court in Woodruff County was abandoned upon the finding of an indictment in the circuit court of White County—whether the finding of this indictment constituted a relinquishment by the State of the jurisdiction previously acquired in the Woodruff court.

On further reflection the views expressed by the majority of the court in the original opinion remain as before, and are now adhered to, so the rehearing will be denied.