## Richmond.

### HENDRICKS v. COMMONWEALTH.

### Absent, *Moncure*, P.

1. A citizen of Maryland is liable to prosecution and conviction for the violation of 18th and 20th sections of ch. 100, Code of Virginia, 1873, relating to fishing in the Potomac river, which were enacted with the consent and approbation of the State of Maryland.

2. Articles 8 and 10, of compact between Virginia and Maryland, to be found in Code of Virginia, ch. 1, pp. 110, 111, construed.

3. A demurrer to an indictment containing two counts, being general, and not to each count thereof, if either count is good it is properly overruled. And the verdict being general, if supported by either count must stand.

This was a writ of error and *supersedeas* to a judgment of the county court of Fairfax county, rendered at the December term, 1880, upon an indictment against George Hendricks, the plaintiff in error, for unlawful fishing in the Potomac river. A writ of error had been refused by the judge of the circuit court of said county, but was awarded by one of the judges of this court.

The indictment contains two counts, which are fully set forth in the opinion of the court. At the October term, 1880, the accused was arraigned and pleaded "not guilty," and a jury was sworn and found "the accused guilty as charged in the indictment." Whereupon the counsel for the accused moved the court for a new trial and an arrest of judgment, and the court not being advised what judgment to give in the matter, took time to consider, and suspended judgment until the next term of the court to enable the counsel for the accused to prepare his bill of ex-

ceptions. At the next term of the court, the court rendered judgment against the accused for $50 and the Commonwealth's costs, to which judgment the accused, by his counsel, excepted, and filed his bill of exceptions, which was made a part of the record in the case.

The bill of exceptions, which sets forth the facts proved before the jury, and proceedings in the case which do not *elsewhere* appear in the record, is as follows:

"Be it remembered, that upon the trial of this cause, the following facts were proved before the jury, on behalf of the Commonwealth:

"That on the 17th day of May, 1880, Stony Point fishing landing, a regularly hauled fishing landing, in Fairfax county, Virginia, was owned by Mrs. Sarah Otterback, and rented and occupied by William Neitzy.

"That said fishing landing is upon the Potomac river, and situated between Holloway Point, on the north, and includes High Point at the mouth of Occoquan bay in said county, on the south; that there is a considerable indentation in the Virginia shore between the points aforesaid, where the said landing is located; that the width of said river along the front of said shore is about one mile and a half.

"That the main channel of said river is near to the Maryland shore, and about one mile from the Virginia shore; that the Virginia shoals or flats extend out to said main channel, except that there exists a small 'swash' channel about two or three hundred yards from the Virginia shore, running in front of said fishing landing, and being about sixteen feet deep and about two hundred yards wide.

"The depth of water beyond the 'swash' channel towards the main channel is about nine feet; that the seine of the said Neitzy fishes over to the Virginia edge of the channel; that said fishing landing is an old established fishing shore, and has been rented and occupied by the

said Neitzy for 28 years; the annual rent is $1,300, and that it formerly rented for $2,500; that in extreme low water the river bottom becomes naked from the Virginia side almost to the 'swash' channel; that the bounds or berth of said fishing landing had been staked off by the said Neitzy.

"That it was not proved that said berth had been staked off by commissioners by the county court.

"That on the said 17th day of May, 1880, the defendant drifted and fished his gill-net in the berth of said fishing landing in the said 'swash' channel, and opposite to the shore of said landing.

"That said gill-net is not fished by laying out from and hauling to and landing upon the shore.

"That said defendant so fished against the permission of the owner and the occupier of said shore.

"That said Neitzy had previously notified the gillers, through an agent, not to fish his berth; but it was not proved that the defendant was one thus notified.

"That the defendant was arrested upon a warrant sworn out by said Neitzy on said May, 1880, in said berth, while in the act of fishing the gill-net aforesaid.

"That the arrest took place shortly after dark upon said river, while the defendant was in his boat. There were seven other gill-nets being fished at the same time by persons in the said berth.

"That three boats' crews were arrested and the boats and nets taken by the officers.

"That some of the nets drifted against the stakes of the berth, and the nets were rigged to fish in 18 feet water.

"That at the time of the arrest the said Neitzy did not have his seine laid out, but that often the gillers would be fishing in his berth, and within the compass of his seine when it was laid out in the water.

"That after the arrest, defendant said he would fish Neitzy's berth as long as he pleased.

" That the statute laws of the State of Maryland relating to the subject of unlawful fishing in the river Potomac were proved before the jury.

" On behalf of the defendant, the following facts were proved : That he paid five dollars for the season for the privilege of using the shore for his boat and drying his nets at Indian Head on the Maryland side of the river, opposite to the lower portion of the shore of the said Neitzy, but not opposite to that portion of the shore of said Neitzy where the said defendant was fishing at the time of his arrest.

" That said Indian Head is a regular fishing shore, but has not been fished by hauling seine for a number of years.

" That as to the fact whether or not the said defendant is a non-resident of this State and a resident of Maryland, the following facts were proved :

" That the defendant was at one time a resident of the city of Alexandria, Virginia, and voted therein, but that in the year 1876 he left the State of Virginia and went to Charles county, Maryland, where he married and has since lived, claiming his residence there; but that his name still remains upon the registration books of the city of Alexandria. And that in May, 1880, while the defendant was in jail in Fairfax county upon this charge, a friend caused him to be assessed with a capitation tax and paid it; but defendant did not ratify said act or vote at the election held in said city of Alexandria in May, 1880, nor has he voted in said city since November, 1876.

"And these being all the facts proved on said trial, the defendant ask the court to instruct the jury as follows, to-wit:

" 1. If the jury believe from the evidence that the defendant is a *bona fide* citizen of the State of Maryland, and that the offence in the indictment charged was committed

·on the waters of the Potomac river, they shall find the defendant not guilty.

"2. The jury must find the defendant not guilty upon the second count in the indictment.

"But the court refused so to instruct the jury and the defendant excepted.

"The cause having been submitted to the jury, they returned a verdict in the following words, to-wit:

"We, the jury, find the accused guilty as charged in the indictment.

"Whereupon the defendant moved the court to set aside the verdict and grant him a new trial; which motion was denied and the defendant again excepted; and the defendant, praying the court to sign and seal this, his bill of exceptions, the same is done accordingly.

"J. SANGSTER, [Seal]<br>
"County Judge Fairfax County."

*Charles E. Stuart,* for plaintiff in error.

*The Attorney-General,* for the Commonwealth.

ANDERSON, J., delivered the opinion of the court.

The indictment contains two counts. The first charges, that between the 1st day of March and the 1st day of June, 1880—viz: on the 17th day of May, 1880—within the waters, bounds and berth of a regularly hauled fishing landing upon the Potomac river, in the county of Fairfax, without permission either of the owner or occupier of the said fishing landing, he, the said George Hendricks—the plaintiff in error—a certain seine and gill-net, which he then and there had, did unlawfully haul, drift and fish, contrary to the act of the general assembly in such case made and

provided by the mutual consent of the States of Maryland and Virginia—the said act of the general assembly of Virginia being then and there in full force and effect, by the enactment of a similar law by the state of Maryland—against the peace and dignity of the Commonwealth of Virginia.

The second count charges that the said George Hendricks, on the 17th day of May, 1880, upon and in the Potomac river, and opposite the shore of the river in the said county of Fairfax, with a certain gill-net and seine, other than such as may be laid out and hauled to, and landed upon the shores of said river, did unlawfully fish contrary to the act of the general assembly of Virginia in such made and provided, by the mutual consent of the States of Maryland and Virginia, &c., as in the first count. The first count is founded on § 18, ch. 100 of the Virginia Code of 1873, and the second count upon the 20th section of said chapter. Both of these sections were enacted with the consent and approval of the State of Maryland, and, in fact, were not to go into effect, by express terms, until a similar act was passed by the legislature of Maryland, which is admitted has been done.

But it is alleged that George Hendricks was a citizen of Maryland when he committed the offences charged in the indictment (and it is admitted that it is proved that he committed them); but being a citizen of Maryland, it is insisted that, by solemn compact between the States of Virginia and Maryland, made in 1785, and which is still in force, he could not be tried by a court of the Commonwealth of Virginia, but could only be tried by a court of Maryland which had cognizance of such offences.

By article eight of that compact, which may be found in the Virginia Code of 1873, p. 110, "all laws and regulations, which may be necessary for the preservation of fish" in the river Potomac or the river Pocomoke, within

the limits of Virginia, "shall be made with the mutual consent and approbation of both States." The effect of this article is to give the State of Virginia concurrent jurisdiction with the State of Maryland, over the Potomac river from shore to shore, and over that part of the Pocomoke river which is within the limits of Virginia, to enact such laws, with the consent and approval of Maryland, as may be deemed necessary and proper for the preservation of fish in said waters. The power of a State to enact laws, carries with it the judicial power to enforce them. A law without a sanction is no law; and an act of legislation without power to enforce it, is not a law. The judicial, unless otherwise stipulated in the compact, is co-extensive with the legislative jurisdiction. On this subject reference is made to Lawrence's Wheaton's Intern'l Law, 224 to 229; *United States* v. *Cornell*, 2 Mason C. C. 64–4.

It is contended that this concurrent jurisdiction is qualified and restricted by article ten of the compact. That article relates to piracies, crimes and offences. First, to those committed on that part of the Chesapeake bay which is within the limits of Virginia or where it is doubtful, the line of division being doubtful; or on that part of Pocomoke river which is in the limits of Virginia, or where the line is doubtful. It is stipulated that if they are committed by any persons not citizens of Virginia, against citizens of Maryland, they shall be tried in the court of the State of Maryland, which has cognizance of such offences. If committed by persons not citizens of Maryland against citizens of Virginia, they shall be tried in the Virginia court which has cognizance of such offences. If committed by persons not citizens of either State against persons not citizens of either State, they shall be tried in a Virginia court which has cognizance of such offences. If they are committed by a citizen of Virginia, or of the State of Maryland, either against the other, the offender shall be tried in that State of which the offender is a citizen.

Said article relates, secondly, to piracies, crimes and offences committed on the Potomac river, and provides that jurisdiction shall be exercised in the same manner in every respect, except in cases of piracies, crimes and offences committed by persons not citizens of either State upon persons not citizens of either State, the offenders shall be tried in the court of the State to which they shall first be brought.

This article has reference only to offences against the citizen or individual. When the offence is against the State, and not against an individual or citizen, there is no declaration as to the court of which State shall take cognizance of it. The jurisdiction in such case is left to be regulated by the public law, except so far as it is determined by article 8, that it shall be regulated by the concurrent legislation of both States, which has been done. And this prosecution is for the violation of the 18th and 20th sections of a statute which was enacted by the State of Virginia, with the consent and approval of the State of Maryland, which has a similar statute. Va. Code of 1873, ch. 100, §§ 18 and 20.

We are of opinion that article 10, under the denomination of "piracies, crimes and offences," was not intended to embrace offences against the laws and regulations with regard to fish, which had been disposed of by article 8, and over which full and complete concurrent jurisdiction had been given to both States, to make such laws and regulations, with mutual consent and approval, as they might deem necessary and proper. After having determined that the legislatures of the two States should regulate and dispose of that subject by concurrent legislation, they would hardly have divested the legislatures of the authority and jurisdiction of that subject, and to regulate and dispose of it as they might deem necessary and proper, by laws passed with mutual consent and approbation, and undertaken to

determine and dispose of it by the compact itself in a subsequent article—to regulate by the compact itself what had just before been determined should be regulated and disposed of by the legislatures.

But if the 10th articlele can be regarded as a restriction upon the concurrent jurisdiction given to the two States, by mutual and concurrent legislation and regulations with regard to fish in said waters, it is, as we have seen, only applicable to offences against the citizen. Whether the prosecution under the first count in the indictment is for an offence against a citizen, may be questionable. The compact in 10th article seems to have been carefully limited to offences against the citizen, as distinguishable from offences against the State. It is true that offences may be committed against the State in injuries and trespasses against the person; but they are separable, and for the injury to the citizen he has the right of action against the offender, who may also be liable to a prosecution for his offence against the State. But in this case the offence charged against the State, committed within the bounds of a fishing landing, would have been all the same an offence against the State if there had been no owner or occupier of the landing to give or withhold the permission.

In this case, there was an owner and occupier of the fishing landing within the bounds of which the offences are charged in the first count to have been committed without the permission of the owner or occupier—an averment which it was necessary and proper to be made in that count, yet in the second count, under the 20th section of the statute, no such averment was made, or could have been made. For offences under that section, and as laid in said count, involve no violation of private right, but were purely offences against the State, and consequently do not fall within the restrictions as to jurisdiction, contained in article 10 of the compact, and are clearly within the pur-

view of section 20 of the statute, which is unquestionably consistent with article 8 of the compact.

But if the defendant, if a citizen of Maryland, could not be convicted under the first count of the indictment, because it involved an offence against a citizen of Virginia, a position which we think is not tenable, yet he was liable to be convicted under the second count. The demurrer being to the indictment, and not to the count thereof, if either of them was good, it was properly overruled. And the verdict being general, if supported by either count, must stand. But it is contended that the second count is faulty, because it does not negative the proviso in the 20th section, which is as follows: "Provided that nothing in this section shall be construed to prevent *bona fide* citizens of the counties bordering on the aforesaid waters from fishing the shores they own or occupy, as they have hitherto been in the habit of doing." It is contended that it should have been shown by averment in the indictment that the accused was not within that proviso. But this is expressly overruled in *Hill's case*, 5 Gratt. 682.

The court is of opinion, therefore, that both instructions to the jury prayed by the defendant were properly overruled, and they deem it unnecessary to consider the question whether the defendant could avail himself of an objection to the jurisdiction of the court, under the plea of not guilty, or could only have availed himself of it by a plea in abatement. The court perceives no error in the judgment of the court for which it should be reversed, and is of opinion to affirm the same.

JUDGMENT AFFIRMED.