## MEANS v. STATE.

### Opinion delivered May 3, 1915.

BOUNDARIES—STATE BOUNDARIES—CONCURRENT CRIMINAL JURISDICTION.— The terms of Act 290, Acts 1909, providing for concurrent criminal jurisdiction over the Mississippi river between Arkansas and Tennessee, not having been complied with by the State of Tennessee, by the passage of an act granting same, the Circuit Court of Mississippi County, Arkansas, has no criminal jurisdiction over offenses committed on an island in the Mississippi river, east of the middle of the main channel of the said river, opposite said county.

Appeal from Mississippi Circuit Court, Osceola District; *W. J. Driver,* Judge; reversed.

*S. L. Gladish,* for appellant.

Under the agreed statement of facts, the sale having been made on an island at a point east of the main channel of the Mississippi river, it occurred in the State of Tennessee, and not in Mississippi County. The court had no jurisdiction. 40 Ark. 503, 506, 507; 30 Ark. 43; 134 S. W. 624.

*M. P. Huddleston* and *J. T. Coston,* for appellant.

Arkansas and Tennessee have concurrent jurisdiction over crimes committed on the river. Shannon's Code of Tennessee, § 84; Castle's Supplement (Ark.) § 2083b. Independently of the foregoing statutes, the courts of either State would have jurisdiction by virtue of the Act of Congress admitting Arkansas into the Union. Revised Statutes of Missouri, 1909, p. 36; Kirby's Dig., p. 174; 159 S. W. 1133; 95 Pac. 720, *et seq.*

SMITH, J. Appellant was convicted on a charge of selling liquor illegally under the following agreed statement of facts:

"State of Arkansas,

vs.          STIPULATION.

"Bob Means.

"It is agreed and stipulated in this case:

"First. That on March 10, 1915, defendant, Bob Means, did sell to Lightning Miller a pint of alcoholic, intoxicating liquor.

"Second. That at the time of said sale the defendant and Lightning Miller were at a point on Island 34 west of the Tennessee shore but east of the middle of the main channel of the Mississippi river, opposite Mississippi County, Arkansas.

"Third. That said sale of liquor occurred at a point on said island opposite Mississippi County east of the middle of the main channel of the Mississippi river and west of the Tennessee shore.

"This stipulation may be introduced in evidence by either party, and when introduced shall be binding and conclusive evidence of the facts stated therein.

"State of Arkansas,

"By M. P. Huddleston, Prosecuting Attorney.

"Bob Means, By S. L. Gladish, Attorney."

Upon the trial of any criminal charge the burden devolves upon the State to prove the commission of the crime within the jurisdiction of the court or, as is commonly said, to prove the venue. This may be done by a preponderance of the evidence, but no attempt is made here to show that the island upon which the liquor was sold is within the boundary of the State of Arkansas, and the stipulation does not prove the venue, unless jurisdiction is conferred upon the courts of this State by the section of Shannon's Tennessee Code, hereinafter set out and by the Act of the General Assembly of this State hereinafter referred to. *Cessill* v. *State,* 40 Ark. 503; *Kinnanne* v. *State,* 106 Ark. 286; *Wolfe* v. *State,* 107 Ark. 33.

It is conceded on behalf of the State that the proof does not show that the island is a part of the State of Arkansas, but it is said that inasmuch as the island lies in the Mississippi River, which river forms the boundary between the States of Arkansas and Tennessee at the point in question that such proof is unnecessary, for the reason that the courts of those States have concurrent jurisdiction of this and all other islands lying within the Mississippi River. The correctness of this contention presents the sole question in this case.

It is urged that concurrent jurisdiction exists on the waters of the Mississippi River and over the islands lying in said river as the result of the enactment of Act No. 290, of the Acts of the General Assembly of the State of Arkansas of 1909, page 888, and of section 84 of Shannon's Code of Tennessee. The said Act 290, is as follows:

"Section 1. That the criminal jurisdiction of the State of Arkansas be and is hereby extended as follows:

"Beginning at a point where the north boundary line of Arkansas intersects the west bank of the Mississippi River and extending east along a line in extension of and parallel to the said north boundary of Arkansas to the east bank of the said Mississippi River; thence south along said bank, and following the meandering thereof to a point where a line drawn east along and parallel to the south boundary of Arkansas would intersect the said east bank of the Mississippi River, thence west along said line to a point where the south boundary line of Arkansas intersects the west bank of the Mississippi River.

"Sec. 2. That the State of Arkansas and her sister States, Tennessee and Mississippi, have concurrent criminal jurisdiction over the parts of said territory lying opposite them and between the lines extending and parallel to their north and south boundaries.

"Sec. 3. That this act be in force when the said States of Tennessee and Mississippi, or either of them, pass a similar act governing the territory described in this act, opposite them and between their said north and south boundaries."

Section 84 of Shannon's Code reads as follows:

"The State has concurrent jurisdiction on the waters of any river which forms a common boundary between this and any other State."

We judicially know that our act is more recent than the section of Shannon's Code quoted, and we assume, of course, that the Legislature of this State was aware of this section of Shannon's Code at the time of the enactment of our statute quoted above. It will be observed that our act becomes effective in the event only that Tennessee and Mississippi, or either of them, enact similar legislation; and no such legislation had been enacted by Tennessee at the time of the sale of the liquor by appellant.

The difference between our statute and that of Tennessee is manifest. The Tennessee statute asserts jurisdiction "on the waters of any river which forms a com-

mon boundary between this and any other State." It will be observed that it does not say "within the banks of any river forming the boundary of this State." The sale here was on one of the permanent islands of the Mississippi River, and not upon the waters of the river. One reason for legislation of this character is that when crimes are committed upon boats or other floating objects it is frequently difficult to prove the venue, but this difficulty does not arise in the case of the permanent islands lying in the river. In the case of *Brown* v. *State,* 109 Ark. 373, which was a case involving the question of jurisdiction of an offense committed on the waters of a river forming the boundary between Arkansas and Missouri, this court quoted with approval from Rorer on Interstate Law, p. 438, the following statement:

"The existence of concurrent jurisdiction in two States over a river that is a common boundary between them, as more particularly referred to in section 1 of this chapter, vests in each of such States, and in the courts thereof, except as to things permanent, and except as to maritime and commercial matters cognizable by the National government and courts, jurisdiction both civil and criminal, from shore to shore, of all matters of rightful State cognizance occurring upon such river in all parts thereof where it forms such common boundary. Such concurrent jurisdiction obviates the difficulty in judicial proceedings of ascertaining on which side of the main channel of a boundary river occurrences have transpired or crimes have been committed."

The offense in the *Brown* case was committed on a boat tied to a bridge across the St. Francis River, but it appears from the opinion in that case that the State of Missouri had passed an act which gave Arkansas and Missouri concurrent criminal jurisdiction over the whole of the St. Francis River where it is the boundary line between the two States.

Discussing jurisdiction over permanent objects Mr. Rorer, at the same page says: "But in the very nature of things jurisdiction of permanent objects is exclusive

in the State on whose side of the main channel they are situated. Concurrent jurisdiction of the abutting States over permanent objects, as islands situated in the river, or permanent erections at either shore, would be utterly impracticable in the administrative affairs of State, as rendering owners and residents of such property liable to taxation, and other liabilities and duties of citizenship and ownership, to each of the States. Hence it can never be intended in law that jurisdiction which is concurrent over a river is concurrent also over islands and other permanently fixed objects therein. Nor does the reason of the law of concurrent jurisdiction apply to such objects whose true location in reference to the center of the main channel can always be known or ascertained; but it was to obviate the difficulty of showing on which side thereof occurrences of judicial cognizance had taken place that concurrent jurisdiction was resorted to in law.''

We need not consider here what jurisdiction would be conferred upon the courts of this State over an island in the Mississippi River which is a part of the State of Tennessee if that State should enact a law similar to Act 290 of our Acts of 1909, nor need we consider what jurisdiction over the waters of the Mississippi River was acquired by the courts of this State upon the passage of this Act 290. Those questions are not presented here.

The condition required by our act to confer concurrent jurisdiction over the island is not met by section 84 of Shannon's Code, and has not been met by any subsequent legislation, and it follows, therefore, that the proof does not show that the circuit court of Mississippi County had jurisdiction of the offense charged, and the judgment of that court is, therefore, reversed and the cause remanded.