## PADGETT *v.* STATE.

### Opinion delivered January 16, 1922.

1. HOMICIDE—MATRICIDE—EVIDENCE.—In a prosecution for murder, evidence held to warrant finding that defendant was guilty of murdering his mother.

2. HOMICIDE—EVIDENCE.—Where the body of deceased was found floating in the river, with no bruises on her body except two small cuts on her lips, the jury might have found that defendant either knocked her senseless and left her in a leaky boat to drown or threw her body into the river.

3. CRIMINAL LAW—VENUE.—In prosecution of a son for murder of his mother whose body was found floating in the Mississippi River between Arkansas and Tennessee the courts of both States had concurrent jurisdiction where the crime was committed on the river.

4. CRIMINAL LAW—OBJECTION NOT MADE BELOW.—Where the court submitted a case to the jury one evening, but directed them not to return a verdict until the next morning on account of the importance of the case, no objection thereto will be considered on appeal where none was made in the trial court.

Appeal from Crittenden Circuit Court; *R. E. L. Johnson,* Judge; affirmed.

*Davis, Costen & Harrison,* for appellant.

The jurisdiction is in the State of Tennessee, for the reason that no valid act has been passed by that State similar to § 2862 of C. & M. Digest. Act 290 Acts 1909. See also 118 Ark. 362.

The evidence was not sufficient to support the verdict. 68 Ark. 529; 85 Ark. 360; 68 Ark. 529; 97 Ark. 156; 34 Ark. 639.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

The jurisdiction was properly laid. Similar acts having been passed by the States of Arkansas and Tennessee, act 290 of Acts of Arkansas, approved March 31, 1909, and chapter 123 of the Public Acts of Tennessee, approved May 17, 1915.

HART, J. Elvus Padgett was indicted for the crime of murder in the first degree, charged to have been committed by killing his mother on the 19th day of July, 1921, in Crittenden County, Ark.

He was tried before a jury and found guilty of murder in the second degree. His punishment was fixed by the jury at a term of sixteen years in the State penitentiary, and, from the judgment pronounced on the verdict, the defendant has duly prosecuted an appeal to this court.

It is earnestly insisted by counsel for the defendant that the evidence is not legally sufficient to support the verdict. According to the evidence adduced in favor of the State, the defendant, Elvus Padgett, was the son of Mr. and Mrs. J. W. Padgett. Sometime before the death of J. W. Padgett, his wife secured a divorce from him, and in a short time thereafter married W. J. Felton. After J. W. Padgett's death, W. J. Felton and wife moved on a place owned by Padgett on Centennial Island in the Mississippi River on the Tennessee side of the river opposite Crittenden county in the State of Arkansas. W. J. Felton and wife separated about two months before Mrs. Felton met her death, but were not divorced. After W. J. Felton and his wife separated the defendant continued to live with his mother at their home on Centennial Island in the river. He went home on Tuesday preceding the death of his mother on Thursday, and was asked by his mother to plow some corn. After plowing a while he had a quarrel with his mother about his work. He cut

up the plow-line and horse-collar and broke the pump and some windows in the house. Thus far the facts are undisputed.

W. J. Felton, the husband of the deceased, was a witness for the State. According to his testimony, he had been separated from her about two months. After J. W. Padgett and wife had been divorced, W. J. Felton married the divorced wife. After J. W. Padgett's death they moved on Centennial Island and continued to live there until about two months before Mrs. Felton was found dead in the Mississippi River about the 20th of July, 1921. W. J. Felton had seen his wife on the Saturday preceding the Thursday morning her body was found floating in the Mississippi River. Their separation occurred on account of the defendant, and there was no ill feeling between them at the time Mrs. Felton met her death. W. J. Felton found the body of his dead wife floating in the Mississippi river about twenty-five yards below the landing on the Arkansas side. There was a split something like three-eighths of an inch on each of her lips and there was a bruise on her face. Her body looked as if it had been in the river about two days. Near her body there was a small paddle boat which had formerly been under the house on Centennial Island and used there as a feed trough. One end of this boat was split off to within two inches of the water. There was a piece of blanket nailed over that end. By sitting in the other end of the boat the split place would be above the water. Mrs. Felton owned two other boats which were kept near her house at the landing. They were found tied close together on the Arkansas bank of the river above where her body was found.

At the coroner's inquest the defendant said that the last he saw of his mother was on Tuesday morning, and that she was riding a pony down the Tennessee side of the river on her way to have him arrested. The defendant said that he had refused to plow some

corn when asked to do so by his mother, and his mother told him that he could not stay there unless he did something to support himself. The defendant then broke out the window lights and threw some stuff through the windows at his mother. He then took both boats across the river so that his mother could not· get across to have him arrested. The defendant further stated that, after he heard his mother call for help over there on the island, he went back there. He then got his clothes and ·came back to the Arkansas side, and stayed there until he was arrested just before his mother's body was found.

W. J. Felton had been told about his wife's calling for help, and went over to the island on Wednesday before the body was found on Thursday morning. He found the pump and other articles broken and scattered about the house and things chopped up with an ax. Mrs. Felton was not there. Felton then proceeded to search the river for the body of his wife, and found it near the bank on the Arkansas side opposite Crittenden County on the next morning. The body was found at a place on what was called Old River where there was no current.

T. E. Scammehorne testified that the defendant came to his house on Tuesday evening before the body was found on Thursday morning, and stayed all night with him. He left Wednesday morning, and said that he was going home after his wagon. He said that he and his mother had had some trouble, and that he had picked up and left home.

According to the testimony of Allie Horton, the defendant stayed all night there the night before the body was found. Defendant stated that he and his mother had had a racket the day before.

It was also shown that a pair of .muddy shoes was found at Mrs. Felton's house on the island, and also a pair of muddy overalls was found in a tub by the porch. The mud on them appeared to be sticky like

that on the Arkansas side of the Mississippi river. It was also shown that the Arkansas side of the river was soft and muddy, and that the Tennessee side had a hard firm bank.

The defendant on the Wednesday night that he stayed all night at Allie Horton's house sent to Mrs. Laura Gleason a letter, which is as follows:

"Don't let anybody read.

from Elvus.

"Mrs. Gleason: Say woman: I want to see you on some business this very night for I am about to be locked up. Felton and Sanders are looking for me right now and I have got something to tell you about *Nova*.

"I will tell you how you can get away; tell them Mama sent for you and that she is very sick. Darling, please come, I want to see you; come out by the garden. I will take Allie back home and come to the fence Answer on here.

"MRS. LAURA GLEASON."

Mrs. Laura Gleason testified that she received the letter, and that the Nova referred to in it was her daughter. She did not reply to the note, but sent word to the defendant that she would see him the next morning. Mrs. Gleason lived about a mile and a half from where the defendant lived.

Lottie Ellis testified that she lived at Lamberthville on the Arkansas side of the Mississippi River just opposite to where Mrs. Felton lived on the Tennessee side; that she lived three or four hundred yards from the river; that, on the Tuesday before the body of Mrs. Felton was found in the river, she went to the levee and heard Mrs. Felton say in a loud voice, "Oh, me, come here, somebody," and then she squalled again. This was between eight and nine o'clock in the morning. The voice that she heard screaming came from the direction of Mrs. Felton's house, and it sounded like her voice. She said she heard some loud talking

over there at the same time.  About eleven o'clock on the same morning she saw the defendant on the Arkansas side of the river.

Dan Allen testified that he lived near Lamberthville in July, 1921, at a contractor's camp, and at about nine o'clock on the Tuesday morning before the body of Mrs. Felton was found floating in the Mississippi River on Thursday, he heard a woman on the island where Mrs. Felton lived crying, ''Oh! oh! help! help!'' that in about a half hour after this the defendant came to where he was, and he asked the defendant if he did not live over the river.  The defendant replied that he did; that he then told the defendant that he had heard an awful noise over there that morning, and that the defendant said that he was there.

A. B. McCorkle testified that Lottie Ellis, a negro woman, reported that there had been some trouble over on the island where Mrs. Felton lived; that about an hour and a half after this he saw the defendant, and asked him about it.  The defendant said, ''Oh, I was raising a little hell over there.''  He admitted that he broke up the window lights and tore up the house.  He said that he had brought the boats over the river and locked up the house.

O. L. Sanders is a deputy sheriff of Crittenden County, and arrested the defendant.  According to his testimony, the body of the deceased was found about thirty yards below the landing on the Arkansas side of the river, on the 20th of July, 1921.  Her body was lying ten or fifteen feet from the edge of the water. The body of the deceased was stripped down to her waist, and no bruises were found on it.  No marks of violence were found on her body except two cuts on the lips.  The body looked like it had been in the water about two days.  Sanders arrested the defendant at Allie Horton's place about a mile from where the body was found.  The water on the Arkansas side at this point was very muddy, and on the opposite side where

the house of Mrs. Felton was on the island, the bank is hard, and the water is deep. They found a pair of the defendant's heavy shoes over at Mrs. Felton's home on the island that he had worn every day. They had been partly washed off in a dish-pan sitting there, and they found a pair of overalls in a tub that had the sticky river mud on them. The body was found in Crittenden County, Ark. This evidence was sufficient to warrant the jury in finding the defendant guilty. The defendant and his mother lived alone on the island. Mrs. Felton was heard to scream and call for help on the Tuesday morning preceding the finding of her body in the Mississippi River on Thursday morning. The defendant admitted that he was at home that morning, and that he had a quarrel with his mother. He had cut up his plow gear and had broken the pump and the window lights in the house. This indicated that he was in a violent rage. He admitted that he crossed over the river on the same morning and brought both of the skiffs which were anchored in the water near their island home. He also admitted that he had been, as he expressed it, "raising hell over there." The body was found on Thursday morning, and it appeared to have been in the water about two days. The husband of the deceased said that, while he had been separated from her about two months, there were no hard feelings between them. He also stated that he had not seen her since the Saturday preceding the finding of her body in the river. As soon as he heard that there had been a disturbance on the island, he went over there, and when he found the disturbed condition of the house and that his wife was not there, he began a search of the river for her body, and found it floating near the bank on the Arkansas side. The jury might have found from this that he had no part in the killing, and that Mrs. Felton's son killed her after having had a violent quarrel with her.

Counsel for the defendant point to the fact that there were no bruises found on her body except two

small cuts on her lips, and that this negatives the idea
that her son killed her. Under the circumstances the
jury might have found that he knocked her senseless
and placed her in the old paddle boat, which he tore
loose from under the house and dragged her into the
Mississipi river and left her in the leaky boat to drown.
Or the jury might have found that he threw her body
into the river and drowned her and left the leaky boat
there in an attempt to conceal his act by making it
appear that she had drowned herself while attempting
to cross the river in the old leaky boat.

It is insisted by counsel for the defendant that, if
he killed her at all, he killed her at their home on the
island which was in Tennessee, under the rule in *Means
v. State,* 118 Ark. 362. The record shows that all the
witnesses lived at or near Lamberthville, which is on
the Mississippi River in Crittenden County, Arkansas.
The body was found near the landing there, and the
deputy sheriff who was present when the body was
found testified that it was in Crittenden County. It is
true the island home of Mrs. Felton was on the Ten-
nessee side of the Mississippi River, but it was just
opposite Lamberthville. From the fact that no bruises
except the two cuts on the lips were found on the body
of the deceased it is inferable that she was not killed
on the island, but that she had been knocked senseless
and carried by her son to the Mississippi River and
killed there by his drowning her.

The Mississippi River at that point forms the
boundary between the States of Arkansas and of Ten-
nessee, and proof that Mrs. Felton was killed by being
drowned in the river opposite Crittenden County, which
borders on the Mississippi River, was sufficient to war-
rant the jury in finding the defendant guilty, for the
reason that the courts of the two States at that point
would have concurrent jurisdiction over the crime.
See *Brown* v. *State,* 109 Ark. 373, and *Means* v. *State,*
118 Ark. 362.

It is next insisted that the court erred in giving instruction No. 18, which is as follows: "You are further instructed that if you find from the evidence in this case beyond a reasonable doubt that the crime as alleged in the indictment was committed, and that the same was committed by the defendant in the way and manner alleged therein, and that the same was committed by the defendant at any point on or in the Mississippi River opposite Crittenden County, and between the east boundary line of such county and any point of the east bank of the Mississippi River in the State of Tennessee, then you are instructed that such crime would be committed within the jurisdiction of this court, under the provision of an act approved May 31, 1909, and that this court would have full and complete jurisdictional authority to punish same, although you may find that such crime was actually committed in that part of such river within the boundary line of the State of Tennessee, and not within the boundary line of the State of Arkansas, inasmuch as under the provision of such act and a joint act passed by the Legislature of the State of Tennessee, which was in force on the 19th day of July, 1921, (which is now in full force and effect) the courts of the State of Arkansas and the courts of the State of Tennessee have concurrent jurisdiction to punish crimes which may be so committed."

The instruction was correct. The Legislature of Arkansas in 1909 passed an act providing that the States of Arkansas and Tennessee should have concurrent criminal jurisdiction over the parts of the Mississippi River lying opposite the territory of each State. This act was upheld in the case of *Means* v. *State*, 118 Ark. 362. The Legislature of the State of Tennessee by an act approved May 17, 1915, also passed an act providing that the States of Tennessee and of Arkansas have the concurrent jurisdiction over that part of the Mississippi River lying opposite the boundaries on each of said States. Public Acts of Tenn. 1915, p. 342.

Therefore, under the doctrine announced in *Means* v. *State, supra,* the circuit court of Crittenden County, Arkansas, had jurisdiction to try the defendant for an offense committed by him on the Mississippi River opposite the boundary lines of Crittenden County on said river.

As above stated, the jury might have found under the facts and circumstances introduced in evidence that the crime was committed on the waters of the Mississippi River at a point opposite Crittenden County, Arkansas, and the guilt of the defendant was made to depend upon such finding in this instruction. It is also insisted that the judgment must be reversed because the court instructed the jury one evening and submitted the case to them for their consideration, but directed them not to return a verdict until the next morning on account of the importance of the case. No objection at the time was made to the action of the court below. It is unnecessary to set out the exact language of the court in this respect, because no objection was made to it in the court below. On this account we cannot consider this alleged assignment of error. *Wells* v. *State, ante* p. 221.

The court fully and fairly instructed the jury on the various degrees of homicide and upon the question of reasonable doubt. We find no reversible error in the judgment, and it will therefore be affirmed.