STATE *v.* ALEXANDER, *et al.*

4742                                    259 S. W. 2d 677

Opinion delivered June 29, 1953.

*Tom Gentry,* Attorney General, and *Thorp Thomas* and *James L. Sloan,* Assistant Attorneys General, for appellant.

*Rieves & Smith* and *Henry S. Wilson,* for appellee.

MINOR W. MILLWEE, Justice. The defendants are three residents of Tennessee and duly licensed by that state as commercial fishermen. They were charged in the Municipal Court of West Memphis, Arkansas, with the crimes of operating commercial fishing tackle while non-residents of Arkansas and using trammel and gill nets at night in violation of Arkansas statutes. Upon a trial, the defendants were found guilty and fined $50 on each charge and their tackle ordered confiscated. They appealed to the Crittenden Circuit Court.

At the trial in Circuit Court, the trial judge granted the State's motion for a directed verdict of guilty at the conclusion of the evidence in chief on behalf of the defendants, and the same penalty was assessed as in municipal court. The defendants filed a motion for new trial on the ground that the courts' action in directing the verdicts of guilty against them was contrary to the law and the evidence. The order of the Circuit Court sustaining the motion and granting the defendants a new trial recites: "That the court committed error in holding that it is presumed that the offense charged in the information was committed within the jurisdiction of the court, because the place of commission of the alleged crime is an essential element thereof, and the burden is upon the State of Arkansas to show beyond a reasonable doubt that the alleged offense occurred within the actual boundaries of the State of Arkansas, the court further

finding ᵼⱨat the statute giving the State of Arkansas concurrent jurisdiction with the State of Tennessee to the east bank of the Mississippi River was not intended to apply to an act which is criminal in the State of Arkansas but lawful in the State of Tennessee and was particularly not intended to embrace the acts set forth in the information herein.''

In prosecuting this appeal from the order granting a new trial, the State has stipulated that judgment absolute shall be rendered against it if said order be affirmed.

For the purposes of this appeal it seems to be conceded by the State that, at the time of their arrest, the defendants were fishing commercially at night with trammel and gill nets on the Tennessee side of the waters of the Mississippi River where that stream forms the boundary line between the two states. At any rate, a careful consideration of the testimony demonstrates that at least a disputed question of fact for the jury's determination was presented as to whether the defendants were fishing in the territorial boundaries of Tennessee at the time of their arrest. It is also admitted that commercial fishing with trammel and gill nets at night is permitted under Tennessee law and that defendants were duly licensed as commercial fishermen. Ark. Stats., § 47-410 (E) provides that only residents of Arkansas may be licensed to fish commercially and under sub-section (G) the use of trammel or gill nets at night is prohibited.

The State's contention that the trial court correctly instructed verdicts of guilty against the defendants is based upon a compact between Tennessee and Arkansas entered into pursuant to Joint Resolution No. 7 of the United States Congress approved February 4, 1909. This resolution authorized the two states to enter into a compact, ''to fix the boundary line between said States, where the Mississippi River now or formerly formed the said boundary line and to cede respectively each to the other such tracts or parcels of the territory of each State as may have become separated from the main body there-

of by changes in the course or channel of the Mississippi River and also to adjudge and settle the jurisdiction to be exercised by said States respectively over offenses arising out of violation of the laws of said States upon the waters of the Mississippi River." Pursuant to the resolution, the legislatures of Tennessee and Arkansas passed acts which provide that the two states have concurrent criminal jurisdiction over the waters of the Mississippi River where it forms the boundary line between the two states. See Ark. Stats., §§ 43-1401 and 1402; Williams Tennessee Code, § 93.

The issue presented is stated in the following question propounded by the attorney general: "May the State of Arkansas punish an act which has been denominated a crime by this State when that act is committed within territory over which Arkansas has jurisdiction by compact authorized by the Congress of the United States concurrently with the State of Tennessee, despite the fact that the State of Tennessee, within whose actual boundaries the act occurred, has not seen fit to prohibit the same act by its statutory law?" In our opinion, the trial court, in ordering a new trial, correctly answered in the negative where the act complained of, as here, relates to fishing rights.

We approve the following concise statement of the rule in 22 Am. Jur., Fish and Fisheries, § 39: "The concurrent jurisdiction which two states may have over the width of a river, the center of which forms the territorial boundaries of the states, is not to be construed as giving one state authority to punish violations of its fish laws occurring beyond its side of the river, if such act is duly authorized by the neighboring state." See, also, 36 C. J. S., Fish, § 15; Leflar, Conflict of Laws, § 73.

In *Nielson* v. *Oregon*, 212 U. S. 315, 29 S. Ct. 383, 53 L. Ed. 528, it was held that the state of Oregon cannot, by virtue of its concurrent jurisdiction conferred by Congress over the Columbia River, make criminal the operation of a purse net in that river within the territorial limits of the state of Washington, under authority and license

from that state. In so holding, the court said that the primary purpose of the grant of concurrent jurisdiction was to avoid nice and difficult questions as to whether a criminal act was committed on one side or the other of the exact boundary which changes with the shifting of a river channel. The court further said: "The plaintiff in error was within the limits of the state of Washington, doing an act which that state in terms authorized and gave him a license to do. Can the state of Oregon, by virtue of its concurrent jurisdiction, disregard that authority, practically override the legislation of Washington, and punish a man for doing within the territorial limits of Washington an act which that state had specially authorized him to do? We are of opinion that it cannot. It is not at all impossible that, in some instances, the interests of the two states may be different. Certainly, as appears in the present case, the opinion of the legislatures of the two states is different, and the one state cannot enforce its opinion against that of the other; at least, as to an act done within the limits of that other state. . . ."

The Nielson Case was followed in *Miller* v. *McLaughlin,* 281 U. S. 261, 50 S. Ct. 296, 74 L. Ed. 840, where the court held that a grant of concurrent jurisdiction to two states over a river did not preclude one of them, without the concurrence of the other, from regulating fishing by its own residents in that part of the river that is within its own territorial limits. See, also, *Roberts* v. *Fullerton,* 117 Wis. 222, 93 N. W. 1111, 65 L. R. A. 953; *State* v. *Bowen,* 149 Wis. 203, 135 N. W. 494, 39 L. R. A., N. S. 200.[1] A different result was reached in *Olin* v. *Kitzmiller,* 259 U. S. 260, 66 L. Ed. 930, 42 Sup. Ct. 510, where the two states involved in the compact had practically identical statutes regulating fishing rights. The effect of these decisions is to hold that the "concurrent jurisdiction" granted under the compact has reference to jurisdiction over acts which have been made criminal or unlawful by both states insofar as the regulation of fishing rights is concerned. The

[1] Contra: *State* v. *Moyers,* 155 Iowa 678, 136 N. W. 896, 41 L. R. A. N. S. 366. See, also, *State* v. *Cunningham,* 102 Miss. 237, 59 So. 76, Ann. Cas. 1914D, 182.

jurisdiction granted does not empower one state to spread its mere police regulations over the territory of another and thereby regulate the sovereign rights of the latter in or to the fish in the waters flowing over its territory. *Roberts* v. *Fullerton, supra.* An anomalous situation indeed would result if a resident of Tennessee who is duly licensed by that state to fish in its territorial waters could be prohibited from doing so because he is a non-resident of Arkansas.

Since a jury question was made as to whether the defendants were fishing in Tennessee territorial waters at the time of their arrest, the trial court erred in directing verdicts of guilty against them in the first instance. It follows that the court did not abuse its discretion in granting the motion for new trial. The judgment is, therefore, affirmed and judgment absolute will be rendered here against the State in accordance with the provisions of Ark. Stats., § 27-2150. It is so ordered.

GRIFFIN SMITH, C. J., concurs.