STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ELMER HOLDEN, DEFENDANT-RESPONDENT.

Argued January 24, 1966—Decided February 21, 1966.

Mr. *William J. Cook* argued the cause for appellant (*Mr. Thomas F. Connery, Jr.*, attorney for Delaware River Port Authority; *Mr. Norman Heine*, Prosecutor of Camden County, and *Mr. William D. Dilks*, Prosecutor before the Municipal Court of Gloucester City, attorneys).

No one appeared for respondent.

PER CURIAM. The Walt Whitman Bridge spans the Delaware River and connects New Jersey and Pennsylvania. It is owned and operated by the Delaware River Port Authority, a body corporate of the State of New Jersey and the Commonwealth of Pennsylvania, and is policed by members of a force maintained by the Authority. While the defendant was driving on the bridge, his automobile collided with a truck at a point on the bridge which may be called the Pennsylvania side. The defendant remained at the scene until the Authority police arrived and took him in custody. Complaints against the defendant for drunken driving (*N. J. S. A.* 39:4–50) and for careless driving (*N. J. S. A.* 39:4–97) were immediately filed by the Authority police in the Municipal Court of Gloucester City, Camden County, New Jersey. Thereafter the defendant attacked New Jersey's jurisdiction alleging that no offense had been committed within the State. In a letter opinion dismissing the complaints, the municipal magistrate determined that since the defendant had not operated his automobile within the territorial limits of New Jersey, the court lacked jurisdiction. With leave granted, the State appealed to the Appellate Division and we certified before argument there.

In 1931 the State of New Jersey and the Commonwealth of Pennsylvania entered into an agreement establishing the

Delaware River Joint Commission, later known as the Delaware River Port Authority. *L.* 1931, *c.* 391; *N. J. S. A.* 32:3–1 *et seq.; Pa. Stat. Ann. tit.* 36 §§ 3503–3505. The consent of Congress was given during the following year. 47 *Stat.* 308. The agreement provided for the Authority's operation of an existing bridge owned jointly by New Jersey and Pennsylvania. In 1951 a supplemental agreement with respect to an additional bridge was entered into and was thereafter approved by Congress. See *L.* 1951, *c.* 287; *N. J. S. A.* 32:3–13.12 *et seq.; Pa. Stat. Ann. tit.* 36 § 3503; 66 *Stat.* 738. The power to arrest and prosecute for offenses committed on the bridges has been set forth in pertinent legislation adopted by New Jersey and Pennsylvania. *N. J. S. A.* 32:4–6; *Pa. Stat Ann. tit.* 36 § 3504.1. Though there are obscurities in the statutory language, the legislative purpose to afford concurrent jurisdiction to New Jersey and Pennsylvania over all offenses committed anywhere on the bridges appears to us to be entirely evident. Thus *N. J. S. A.* 32:4–6 provides, in part, (1) that the Authority's police force may "make arrests for crimes, misdemeanors, and the offenses of any character committed upon said bridges" and (2) that upon an arrest, the offender may be taken to a proper judicial officer of Pennsylvania or New Jersey "without respect to the portion of the bridge" where the offense may have been committed or the offender may have been arrested. The statute also empowers the Authority to promulgate regulations and fixes penalties for violations thereof; here we are concerned not with any regulative matters but with alleged conduct which violates the laws of both New Jersey and Pennsylvania. *Cf. Nielsen v. State of Oregon,* 212 *U. S.* 315, 29 *S. Ct.* 383, 53 *L. Ed.* 528 (1909); *State v. Alexander,* 222 *Ark.* 376, 259 *S. W. 2d* 677 (1953).

The doctrine of concurrent jurisdiction has a long history and obvious purposes. See *Rorer, Interstate Law* 336 (1879); 22 *C. J. S., Criminal Law,* § 137 (1961). Technical and jurisdictional defenses might be available to criminals where their offenses were committed in disputed boundary territory or on

boundary waters; to avoid this, the states often entered into agreements which contemplated that either state could prosecute under its own laws for any offense committed in the disputed territory or on the waters. See *State v. Moyers,* 155 *Iowa* 678, 136 *N. W.* 896, 898, 41 *L. R. A., N. S.,* 366 (1912). As early as 1783 such an agreement was entered into by Pennsylvania and New Jersey; it set forth that from a designated point the Delaware River shall remain a common highway for the use of the contracting parties and "each state shall enjoy and exercise a concurrent jurisdiction within and upon the water," provided that all capital and other offenses shall be tried in the state where the offender is first apprehended or prosecuted. Paterson, *Laws of New Jersey* 47–48 (1800); *Rev.* 1877, *p.* 1181. In *Commonwealth v. Shaw,* 8 *Pa. Dist.* 509 (*Q. S.* 1899), the court held that under the 1783 agreement a defendant could be tried in Pennsylvania where he was first apprehended, for a felony committed on the New Jersey side of a wooden bridge which then spanned the Delaware.

Many other agreements of similar nature have been entered into from time to time by the states. See Frankfurter and Landis, "The Compact Clause of The Constitution—A Study in Interstate Adjustments," 34 *Yale L. J.* 685, 698 (1925). Notable illustrations may be found in the grants of concurrent jurisdiction to the bordering states over offenses committed on the Mississippi, dealt with in many reported cases. See *State v. George,* 60 *Minn.* 503, 63 *N. W.* 100 (*Sup. Ct.* 1895); *State v. Cunningham,* 102 *Miss.* 237, 59 *So.* 76 (*Sup. Ct.* 1912); *State v. Kurtz,* 317 *Mo.* 380, 295 *S. W.* 747 (*Sup. Ct.* 1927); cf. *Smoot v. Fischer,* 248 *S. W. 2d* 38 (*Mo. App.* 1952); *Schueren v. Querner Truck Lines, Inc.,* 22 *Ill. App. 2d* 183, 159 *N. E. 2d* 835, 839 (1959).

▉ In *State v. George, supra,* the defendant was convicted in Minnesota of a larceny which he had committed on the Wisconsin side of a bridge spanning the Mississippi. In seeking to set aside his conviction, the defendant contended that the grant of concurrent jursdiction applied only to of-

fenses committed while on a movable object in the water and was not broad enough to apply to offenses committed on a permanent structure such as a bridge. His contention was rejected by the Minnesota Supreme Court which found the phrase "concurrent jurisdiction on the Mississippi" to be comprehensive enough to include offenses on bridges as well as on boats. While some decisions have construed similar phraseology more narrowly, they do not bear on the case before us for here the agreement between Pennsylvania and New Jersey dealt specifically with concurrent jurisdiction over bridges. The agreement was clearly a lawful one. See *Wedding v. Meyler,* 192 *U. S.* 573, 24 *S. Ct.* 322, 48 *L. Ed.* 570 (1904); *State v. Federanko,* 26 *N. J.* 119, 126 (1958); *cf. Dutton v. Tawes,* 225 *Md.* 484, 171 *A. 2d* 688, *certiorari* denied 368 *U. S.* 345, 82 *S. Ct.* 385, 7 *L. Ed. 2d* 342 (1961):

"We note also in passing that it has long been established that where the middle of a river or one of the shores of the river is a boundary between two states, these neighbors may establish concurrent jurisdiction over the whole river by compact. Where this is done each of the states has jurisdiction from shore to shore so that the court before which the offender or the subject of legal adjudication, prosecution or trial, is first brought finally determines the case. The cases have reasoned that if the laws of both states make the same act or omission criminal, each state, in carrying out the concurrent jurisdiction, does so permissibly in the enforcement of its own laws. See *Rorer, American Interstate Law,* 2nd Ed., 438 *et seq.; State v. Cunningham,* 102 *Miss.* 237, 59 *So.* 76; *State v. Federanko,* 26 N. J. 119, 139 A. 2d 30; *People v. Central R. R. Co. of N. J.,* 42 N. Y. 283; *Olin v. Kitzmiller,* 259 U. S. 260, 42 S. Ct. 510, 66 L. Ed. 930; *Hendricks v. Commonwealth,* 75 Va. 934; *State v. Kurtz,* 317 Mo. 380, 295 S. W. 747; *Lemore v. Commonwealth,* 127 Ky. 480, 105 S. W. 930; *State v. Mullen,* 35 Iowa 199; *State v. George,* 60 Minn. 503, 63 N. W. 100; *Padgett v. State,* 151 Ark. 290, 236 S. W. 603; *Means v. State,* 118 Ark. 362, 176 S. W. 309; *State v. Catholic,* 75 Or. 367, 147 P. 372." 171 *A. 2d,* at *p.* 696.

In reaching his conclusion that the New Jersey courts could exercise no jurisdiction over an offense committed on the Pennsylvania side of the bridge, the magistrate misconstrued the effect of *N. J. S. A.* 32:4–6. Thus he stated that "it is repugnant" for a New Jersey court to try an offender on

a "criminal or quasi criminal charge under Pennsylvania law." But under *N. J. S. A.* 32:4–6 the New Jersey court does not try the defendant under any Pennsylvania law; as here, it tries him for violation of New Jersey law. The magistrate stated further, that "it could not have been the intent" of the Legislature to permit a choice of jurisdictions in which the statutory penalties for the particular offense might vary. But that was clearly its intent in providing that the offender could be taken before a Pennsylvania or New Jersey court "without respect to the portion of the bridge" on which the offense was committed. While this incident of choice has been the subject of some question (*Rorer, supra,* at *p.* 338), it is recognized as a practical necessity in the field of concurrent jurisdiction and has not given rise to any serious constitutional doubts under the due process clause or otherwise. See *Rorer, supra,* at *pp.* 336 *et seq.;* Frankfurter and Landis, *supra,* 34 *Yale L. J.,* at *p.* 698; 22 *C. J. S., supra,* at *pp.* 366-367. The defendant whose alleged conduct was in violation of the laws of both states is hardly in a position to charge any basic unfairness or other offensiveness in a procedural arrangement which, while it allows either state to prosecute, contemplates that the first prosecution shall be exclusive and preclude further prosecution. See *Rorer, supra,* at *p.* 338; *Nielsen v. State of Oregon, supra,* 212 *U. S.,* at *p.* 320, 29 *S. Ct.,* at *p.* 383, 53 *L. Ed.,* at *p.* 530; *cf. Abbate v. United States,* 359 *U. S.* 187, 79 *S. Ct.* 666, 3 *L. Ed.* 2d 729 (1959).

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.