The Honorable Ernest Cunningham State Representative 727 Columbia Street Helena, Arkansas 72342
Dear Representative Cunningham:
This is in response to your request for an opinion on several questions concerning riverboat gambling operations as allowed by the State of Mississippi. You note that it is possible that these riverboat operations will move on the Mississippi River, and that much of the navigation channel is on the "Arkansas side" of the Mississippi River. Specifically, I have paraphrased your five questions, as follows, regarding these facts:
 1. If a "casino" riverboat should cross into Arkansas territory, will its operators be in violation of Arkansas laws?
 2. Will they be in violation of Arkansas laws if the gaming equipment is not in use?
 3. Will those riverboats be allowed to dock in Arkansas?
 4. If an "excursion" boat, which contains a small casino, which will not be in operation at the time, wishes to "homeport" in Helena, will a legal problem result?
 5. If there are any conflicts between Mississippi River gaming and Arkansas gaming laws, how can they be resolved?
It is my opinion that the answer to your first question is "yes." If a casino riverboat crosses into Arkansas waters while the gambling activity is occurring, it will be in violation of Arkansas law and subject to prosecution. Ordinarily, the criminal jurisdiction of Arkansas would extend only to the middle of the navigation channel or "thawleg." Brown v. State, 109 Ark. 373,159 S.W.2d 1132 (1913). An Act of the General Assembly in 1909, however, extended the criminal jurisdiction of Arkansas to the east bank of the Mississippi River and provided that the states of Arkansas and Mississippi shall have concurrent criminal jurisdiction over the boundary between them. A.C.A. § 16-88-106. The act was implemented to "avoid nice and difficult questions as to whether a criminal act was committed on one side or the other of the exact boundary which changes with the shifting river channel. State v. Alexander, 222 Ark. 376, 259 S.W.2d 677
(1953) at 380. It has also been held, however, that the State of Arkansas does not, under this statute, have the authority to criminally punish an act which occurs on another state's side of the river if the act is not punishable by the other state. Id.
It therefore appears that the rule in cases of this nature (where the act is punishable in Arkansas, but not by the other state) is that Arkansas only has jurisdiction over the criminal act if it occurs inside the actual boundary of the state, which would be on the west side of the middle of the main navigation channel, or the "thawleg."
That being said, it is my opinion that if an operating "riverboat casino" crosses into Arkansas waters, it would be subject to prosecution under A.C.A. § 5-66-103[1] (which prohibits the "keeping, conducting, or operating" of "gambling houses"); or A.C.A. § 5-66-104 (which subjects persons who "set up, keep, or exhibit" gaming devices to prosecution); or A.C.A. § 5-66-107, which provides as follows:
 If the owner or occupant of any house, outhouse, or other building or any steamboat, or other vessel shall knowingly permit or suffer any of the before mentioned games, tables, or banks or shall suffer any kind of gaming under any name whatsoever, to be carried on or exhibited in their houses, or outhouses or other buildings, or on board of any steamboat, flatboat, keelboat, or other vessel on any of the waters within this state, on conviction, every such owner or occupant shall be punished as provided in § 5-66-104.
If such a riverboat crosses into Arkansas waters, it will apparently also be in violation of federal law as set out at15 U.S.C. § 1172, which prohibits the transporting of gambling devices from one state to another where the other state does not authorize the transporting of such devices.
The response to your second question is less clear, but it is possible that even if the gambling activities cease while the vessel is in Arkansas waters, the riverboat may be subject to prosecution under A.C.A. § 5-66-103 or § 5-66-104, both of which prohibit the "keeping" of respectively, gambling houses or devices. See also, Opinion of the Wisconsin Attorney General No. 38-90, issued December 28, 1990 (addressing and deciding the precise question exactly this way). It should be noted, however, that A.C.A. § 5-66-107, with regard specifically to "vessels," prohibits gaming only from being "carried on" or "exhibited." It is thus possible that if the devices were not in use and, in fact, not even "exhibited" while in Arkansas waters, prosecution under this statute would not lie. It is also possible, however, that the prosecutor could elect not to prosecute under this statute, but under either A.C.A § 5-66-103 or § 5-66-104, which prohibit the "keeping" of such houses and devices. Seegenerally State v. Morris, 45 Ark. 62 (1885). Of course, the decision of whether to prosecute such an inactive gambling house or device is left to the discretion of the local prosecutor. It would appear additionally, however, that the vessel would be subject to prosecution under the federal statute cited above, as it prohibits the mere transportation of such devices from one state to another.
In response to your third question, the riverboats may be allowed to dock in Arkansas, subject to the normal criteria which is used for the docking of any vessel, as this question is not governed by applicable gambling statutes. The vessel will subject itself, however, to possible criminal prosecution, under the Arkansas gambling statutes, and federal law, if it does so.
In response to your fourth question, it is my opinion that again, if the vessel docks in an Arkansas port, even if the gambling activities are not occurring, it may subject itself to prosecution under both state and federal law. The decision as to a violation of Arkansas law is left to the local prosecutor.
With response to your fifth question concerning how conflicts between Arkansas and Mississippi law can be resolved, it is my opinion, as noted above, that the criminal jurisdiction of each state attaches on its side of the middle of the main navigation channel of the river.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] It should be noted, however, that this statute has been held unconstitutionally vague in State v. Torres and Dunahay,
Faulkner County Circuit Court No. CR 91-372, 91-374, and 91-376. An appeal to the Arkansas Supreme Court is pending.